## PICKETT ET AL. VS. MERCHANTS' NATIONAL BANK OF MEMPHIS ET AL.

1. ESTOPPEL:

    Beneficiaries under a deed of trust cannot attack its validity, and at the same time assert their rights under it.

2. REFORMATION OF CONTRACT IN EQUITY:

    When a contract, through mistake or misapprehension of its true meaning, departs from the intention of the parties, the power of a Court of Equity to correct it, and make it conform to what the parties intended, is unquestionable.

Pickett et al. vs. Merchants' National Bank of Memphis et al.

3. ATTORNEY: *Authority*.

A general retained does not authorize an attorney to settle or adjust claims, or to alter the terms of a contract made by the client.

4. *The joining by the husband*, as a nominal party, in a receipt for money paid to the wife, under the provisions of a deed of trust, will not, of itself, imply an acceptance by him of the provisions of the trust.

5. RUNNING ACCOUNTS.

For a period of two years A kept an account with a bank, for money loaned, checks paid, and credits for deposits and payments; the bank during the time making monthly statements, striking the balance due each month, which was carried forward and charged against A. Held, that the monthly balances were not distinct settlements, but that the whole constituted a running account, and was, in effect, but one transaction.

6. APPLICATION OF PAYMENTS.

A payment made, without special direction as to its application, cannot be applied by the creditor to unlawful and usurious interest.

7. USURY: *National Banks; Limitation; Jurisdiction*.

The knowingly taking, or receiving, by a national bank, of a greater rate of interest than is allowed by the State in which the bank is located, is, under the Act of Congress, usurious; and the bank incurs the forfeiture of the entire interest—the limitation of two years, contained in the act, applies alone to proceedings for the recovery of the forfeiture provided for, and not to the defense of usury; the State Courts have jurisdiction of questions arising under the act.

8. ————:

When usurious interest is carried into a general account, and made part of a sum found due on final settlement, for which a note is executed, it taints the entire contract with usury; and it matters not that the usurious interest was charged with the tacit consent of the debtor in stating monthly accounts, or by a note substituted for one previously executed.

9. ————: *Who may plead*.

The plea of usury is personal, and when a third party assumes the payment of a usurious debt, and gives the creditor an assurance of payment, he can neither dispute with the creditor the validity or the amount of the debt; the consideration passing from the debtor to the party undertaking to pay is presumed to be adequate to sustain the undertaking; but where the amount of the liability is left for future ascertainment, and there are rights and interests reserved, that can only be protected by the party who has contracted to pay the debt, or by the debtor himself, the rule is different, and the defense may be interposed by the third party.

10. ———: *Effect in Equity*.

    One who comes into a Court of Equity for relief against a usurious contract, will be compelled to pay the principal and legal interest; and if the debt is secured by mortgage, it will stand for the debt and legal interest.

11. TRUST SALE: *Purchaser takes cum onere*.

    The purchaser of property at trustee's sale, takes it subject to incumbrances, and is not entitled to any abatement in the price by reason of such incumbrances.

12. SUBROGATION:

    One who is liable therefor, and pays debts which are assumed by another, and secured by mortgage, will be subrogated to the rights of the creditor in the security.

APPEAL AND CROSS APPEALS from *Mississippi* Circuit Court in Chancery.

Hon. L. L. MACK, Circuit Judge.

*Gideon J. Pillow*, for Mrs. Pickett.

*Henry G. Smith*, for Merchants' National Bank.

*Charles W. Adams*, for Wormley.

*Harry Hill and Walker*, for Ussery.

WALKER, J.:

On the 1st day of March, 1873, the Merchants' National Bank of Memphis, Tenn., filed a bill in the Chancery Court of the County of Mississippi, to subject a tract of land there situate, containing about 3000 acres, known as the Nodina Place, to the payment of debts due and owing the bank, by the firms of Wormley, Joy & Co. and Wormley, Pickett & Co., under a deed of trust, executed by Saffarans, to Smith, as trustee, to be sold upon the non-payment of the debts upon the terms in said deed specified.

The original bill and cross-bills present complications which it may be best to consider separately.

The firm of Wormley, Pickett & Co. was composed of the same parties as that of Wormley, Joy & Co., with the exception that Joy had withdrawn from the firm.

Harden, of Nashville, Tenn., was the original owner of the Nodina tract, sold it to McGavock, and held a mortgage lien upon the land for the payment of the balance of the purchase money; to foreclose which, suit was commenced in the Chancery Court of Mississippi County; pending the suit, Harden sold his debt to Wormley, Pickett & Co., whereby they became subrogated to the legal and equitable rights of Harden, and proceeded to have the mortgaged foreclosed, and the land subjected to sale.

By the terms of the decree of sale, the commissioner was required to sell the land to the highest bidder, on a credit of four months, taking from the purchaser notes for the payment of the purchase money. The sale was made January 4th, 1870, at which Saffarans became the purchaser, for the price of $26,100.

At the April Term of the Chancery Court, by an agreement between Saffarans and Wormley, Pickett & Co., the terms of the sale were so modified so as to allow Saffarans one and two years to pay his bid, he to pay $10,000 of the debts then pressing the firm.

The sale thus modified was confirmed by the Chancery Court, on the 5th of April, 1870, the commissioner executed to Saffarans a deed to the land. On the 28th of May, 1870, a little more than a month after, an agreement was entered into between the firm of Wormley, Pickett & Co. and Saffarans, reduced to writing, and evidenced by the following instrument: "Memorandum of agreement for the full settlement of partnership affairs of Pickett, Wormley & Co., Wormley, Joy & Co. and Wormley, Pickett & Co.: *First*—Wormley and Ussery are each to receive two notes for $2500 each, due at six and eight months from date, with interest, secured by mortgage on the Nodina Place, notes to be signed by Isaac Saffarans. *Second*—William S. Pickett to give his note to Wormley for $6100, also an old claim due Pickett, Wormley & Co., for $1000. *Third*—William

S. Pickett to give his note to J. D. Ussery, for $3000, due 25th of December next, with interest, secured satisfactorily to Thomas R. Smith. *Fourth*—Isaac Saffarans is to take the assets of the firm of Wormley, Joy & Co. and Wormley, Pickett & Co., and to pay the outstanding debts of said firm, said debts to be secured by mortgage on the Nodina Plantation. In witness of all which the several parties to this agreement have hereunto set their hands and seals, this 28th of May, 1870."

ISAAC SAFFARANS.    [Seal.]
W. S. PICKETT.      [Seal.]
RALPH WORMLEY.      [Seal.]
J. D. USSERY.       [Seal.]

Thus it appears that in consideration of the purchase of the assets of the two firms, and of his indebtedness in the purchase of the Nodina Place, Saffarans undertook to pay Wormley and Ussery, at stated periods and amounts, $10,000, and further, to pay the debts of the two firms ; to secure the payment of which he executed a mortgage on the Nodina Place.

Afterwards, on the 2d of January, 1871, (no mortgage having been executed,) in compliance with this agreement, Saffarans conveyed the Nodina Place to Thomas R. Smith, in trust to secure the payment of $600 to Yerger & Co., $900 to J. F. Pickett, $438.75 to Mrs. M. C. Wormley, and to the Merchants' National Bank at Memphis an amount to be ascertained. These were preferred claims, to be first satisfied under the trust, and the sum of $5000 to Wormley, and a like sum to Ussery, as second-class payments, given in consideration of the assets and lands of Wormley, Pickett & Co.

After which, is recited in the deed, the following reference to the agreement of May 28th, 1870:

"And whereas, the said Saffarans, by his contract of purchase, May 28th, 1870, agreed to secure the payment of the aforesaid debts," and also this further recital :

"It is also to be observed that the debt of the Merchants' National Bank is not now ascertained, because it involves a settlement to be made, because the amount secured by the deed is indefinite and uncertain, it is further agreed that in no event shall it exceed the sum of $17,000, principal, and in case said debts, or any of them, shall be paid in any other way, out of the assets of Wormley, Pickett & Co., such payment is not to be considered to affect the rights of the beneficiaries herein."

Nine days after the execution of the deed of trust, Saffarans conveyed the Nodina Place to the wife and daughter of Pickett, in which deed was recited the trust and its provisions, making it, for all necessary legal purposes, part of the deed which he had executed to them; in effect, substituting Mrs. Pickett and her daughter in his stead, and imposing upon them all the obligations imposed, and the rights secured to him under said deed.

Under the state of case thus presented, it becomes necessary to consider the legal and equitable rights of the claimants to an interest in the land conveyed in trust.

It is not questioned but that the legal title of the Nodina Place vested in Saffarans by purchase at the commissioner's sale, and confirmed as modified by the parties; it was so recognized by Wormley, Pickett & Co., on the 28th of May, 1870, subject, however, to their lien right to satisfaction out of the land for the unpaid purchase money. Nor can they attack the validity of the deed of trust, and at the same time assert their claim to satisfaction under it. This question was discussed at length and settled in the case of *Frierson et al.* v. *Branch, ex'r,* reported in 30 Ark., 453.

We do not understand counsel for Wormley and Ussery as contending that the deed of trust is absolutely void for fraud, although the allegations in their cross bills would seem to go that far, but they do not contend that the contract of the 28th of

May, 1870, truly expressed the terms of the undertakings of Saffarans, and was the basis upon which the deed of trust was intended to be made, but was inadvertently, or by misapprehension of its true meaning, so departed from, as to defeat its purpose and object. If such is shown to be the case, the power of a Court of Equity to re-model the contract, so as to make it conform to the true understanding and agreement of the parties contracting, is beyond question; the right to do which, rests upon well recognized rules of equity, too clearly established to need a reference to authorities.

The agreement of 28th of May, 1870, provided that Saffarans should execute notes to Wormley and Ussery, to be secured by mortgage on the Nodina Place, an absolute obligation on his part to pay that sum, an unlimited mortgage upon the property for its payment.

It is true that a mortgage was also to be executed upon the same property, to secure the payment of the debts of the firm. The Nodina Place was a common security for the payment of all, without preference to any, but, by the terms of the deed of trust, preferred debts of $1938.75, together with a deed due the Merchants' National Bank, of unascertained value, were to be first satisfied, leaving the $10,000 to be paid Wormley and Ussery unsecured, unless upon the contingency that the property mortgaged was sufficient to pay all of the debts.

At the time when Wormley and Ussery contracted with Saffarans for a lien upon this property for the payment of their debts, they held a vendor's lien upon the property, and it is supposed that they gave up this lien, or postponed their right to satisfaction until other large claims of undefined amount were settled; nor was there any such stipulation in the contract of May, 1870, as that contained in the deed of trust, by which the lien upon the land was not to exceed $17,000.

This departure in the deed, from the terms of agreement of May, 1870, unless waived by some after agreement, very clearly shows that the deed should be so reformed as to give effect to the contract. The deed does not profess to depart from the contract, but, on the contrary, in express terms, recites that it was given by Saffarans, in full compliance with the agreement of May 28th, 1870, from which we may infer that Saffarans, at the time he executed the deed, supposed it to be a compliance with the terms of his contract of May, 1870. In addition to which, Saffarans, in his answer, says that he did comply with the terms of his agreement, by the execution of the deed of trust. Wormley and Ussery were not present when the deed was executed, nor is there evidence that they ever saw or read it, or if read, may have supposed that it was, as it professed to be, a compliance, on the part of Saffarans, with his contract of May, 1870.

Saffarans, in his deposition, says that all of the negotiations and settlements which I made in carrying out the contract of May, 1870, were with Thomas R. Smith, the attorney representing Wormley and Ussery, and the Merchants' National Bank. * * * I cannot say, positively, who was present at the execution of the deed, besides those who represented Wormley, Ussery and the bank.

Under this state of case, the question arises whether Wormley and Ussery were represented by any one when the deed was executed ; it seems that Smith, who claimed to be their attorney as well as the attorney for the bank, assumed to act for them ; it appears that he did so act when the contract of May was entered into, but it does not appear that he was authorized to change the terms of the arrangement, or to act as their attorney in doing so ; on the contrary, it appears from the testimony of Saffarans that Smith suggested the propriety of taking a deed of trust instead of a mortgage, as a matter of convenience to himself, which,

23

with other stipulations, particularly that limiting the amount of the lien upon the Nodina Place to $17,000, was then agreed upon and the deed executed accordingly; Smith, it appears, was also the attorney for the bank, and the provision made in the deed placing the bank's debt as a preferred claim in violation of the terms of the contract, is so totally adverse to the interests of Wormley and Ussery, as to repel the presumption that in doing so, he acted by authority from them, or that he could under the circumstances act in the double capacity of attorney for both, and do justice to them; a general retainer would not suffice to confer power to compromise, settle or adjust claims, or to alter the terms of a contract. It is, however, contended for the bank that by joining with Mrs. Mary E. Wormley in receipt for $1867.68, Wormley accepted the provisions of the deed. The debt so secured was not his, we may presume was his wife's, and he joined as a nominal party in the execution of the receipt, a circumstance which with other evidence, might tend to prove an acceptance of its provisions, but of itself insufficient for that purpose.

There is also evidence that Smith received for Ussery $1000, but whether received by Ussery under the impression that the payment was made under the provisions of the contract of May, carried into effect by the deed of trust or with a knowledge of the provisions of the deed, does not appear. There is no evidence that either Wormley or Ussery was ever apprised of the provisions of the deed, or of the departure from the contract provided for in it.

Looking at the whole transaction connected with the execution of the deed, the fact that Pickett was the active and managing partner of the concern, and the confidence reposed in him, and the express declarations in the deed of trust, that it was made in accordance with the contract of May, 1870, we do not

think the acceptance of these two sums sufficient to show an affirmance of the deed of trust in its several provisions, and that it should be so reformed as to express the true intention of the parties under the contract of May, 1870, the power to do which, is expressly recognized by this court in the case of *Allen* v. *McGaughey,* 31 Ark., 252.

It appears from the evidence that for some time prior to the 4th of February, 1868, the firm Wormley, Joy & Co., of whom Pickett, Wormley and Ussery were members, had opened a bank account with the Merchants' National Bank of Memphis, with whom they had a running account for moneys loaned and checks paid, and credits for deposits and payments.

The bank made a monthly statement of accounts, and struck the balance due each month, which was carried forward and charged against the firm with 12 per cent. interest; and finally on the 4th of February, 1868, the firm was found to be due the bank $19,353.48, for the payment of which four notes of that date were executed, each for the sum of $4838.37.

Counsel for the Bank contend, that these notes were executed for the sum found to be due upon final settlement, purged of usurious interest, by payment at the time the monthly accounts were rendered, which, in fact, constituted so many distinct settlements. True, there is evidence that the accounts were stated monthly, and a balance struck, but whether the usurious interest was, or not paid, is not shown; nor can we, upon a fair consideration of the transaction between the parties, admit these monthly estimates to be separate and distinct settlements, or indeed settlements at all, but, intended to show how the accounts stood between the parties. It was in fact a running account between the bank and its customer, Wormley, Joy & Co., commenced in 1866, and continued to 1868, the time when the accounts were closed by note, and in fact constituted but one transaction.

So held under like circumstances by the Supreme Court of Tennessee, in the cases of *Weatherhead* v. *Boyers*, 7 Yerger, 545, and *Boyers* v. *Boddie*, 3 Hum., 666. In the first mentioned case Mr. Justice Peck said: "The transaction was a continued one, new dealings, new advances, new securities for money, * * * when taken, make a case where neither time nor the statute of limitation can have effect." The defense was usury, the precise question, as to the time when the statute bar commenced, the transaction of advancements, payments and settlements, extended for several years and was held to be one transaction.

In the case reported in 3d Humphries: The question arose out of a usurious transaction, consisting of a series of settlements, payments and securities, from 1823 to 1840, and was held by the court to be one usurious transaction. Mr. Justice Reese, said: "As a Court of Chancery we cannot but see that all of these notes, all of these payments and renewals, incorporate themselves into one continuing contract and transaction."

Under this state of case, the question presented is, was this an usurious transaction; sec. 5198, Rev. Stat. of United States, provides "that the taking, receiving, reserving, or charging a rate of interest greater than is allowed by the State where the bank is located, when knowingly done, shall be a forfeiture of the entire interest, which the note, bill or other evidence of debt carries with it, or, which has been agreed to be paid thereon." Six per cent. interest is that allowed by the Statute of Tennessee.

It is contended for the bank, that, conceding a greater amount of interest to have been charged than was permissible, it was not carried into the note, but was taken and paid in the monthly accounts, and the notes executed were for a balance of debt actually due, purged of usurious interest.

In support of this position we have been referred to several decisions of courts of high authority, which assert the general

proposition, that if usurious interest is in fact paid, and notes taken for valid consideration, not tainted with usury, a plea of usury could not be sustained; but in the case before us, the evidence failed to make such a case as those reported. It is true, that a monthly account was taken of the debts and credits between the parties, and a balance struck, but whether the deposits made with the bank were in fact applied to the payment of usurious interest, or as a general credit, is not shown. The rule with regard to the application of credits, is most frequently governed by statute; a credit in this State, unless otherwise directed, goes first to the payment of interest; in others, as in Louisiana, to the extinguishment of the most onerous debts; perhaps, in others, to be applied (in the absence of special instruction), at the discretion of the creditor; but whether the one, or the other, unless by special direction, we think the payment should be applied to the liquidation of lawful interest, and not to such as the creditor could interpose a valid defense to.

The usurious interest in this instance, having been carried into the general account, and made part of the sum found due upon final settlement, taints the whole contract with usury, the fact that the account was closed by note amounts to nothing; it matters not whether the usury was charged and taken by any tacit assent of the firm by the bank in stating the monthly account, or by note substituted for the one first given; the question is not how the contract was closed, or renewed, but whether any part of the sum charged, and for which the note was executed, was for the use or forbearance of money at a greater rate of interest than allowed by law to be taken. Such is clearly the rule as laid down by the elementary writers, and accords with numerous decisions, to some of which we will refer.

In *Tuthill* v. *Davis*, 20 John., 285, the Supreme Court of New York says: "As it appears that the note now in question was

given to renew one taken up, the former usurious note then in the hands of the plaintiff, the original party to the usurious contract, without new consideration, but including the extortionate interest of the original loan, this last note is equally infected and of the same illegitimate progeny as the first notes."

In *Read* v. *Smith*, 9 Cow., 647, the court says: "The note upon which the suit was brought, is a continuance of the original note * * * If that note was given upon an usurious consideration, the taint which it imbibed, attached to each of the securities subsequently taken, and affects and destroys the one in question."

In *Thomas* v. *Catheral*, 5 Gill. & John., 25, the Supreme Court of Maryland says. " If the note was made and endorsed in execution of a usurious agreement, it was tainted with usury."

In *Holden* v. *Cosgrove*, 12 Gray, 217, it was held that the same defense may be made to a renewal, as to the original notes.

It is next contended for the bank that, conceding the notes to be usurious, the defense of usury is personal and cannot be pleaded by a third party, who has contracted to pay it, nor can Wormley and Ussery, the debtors who have contracted to have this debt paid, interpose such plea. The numerous decisions referred to by counsel will sustain the proposition, that the plea of usury is personal, and when a third party assumes the payment of a usurious debt, and gives the creditor an assurance of payment, he can neither dispute with the creditor, the validity of the debt, nor the amount due, because, at the time of making the contract to pay, the validity of the debt is conceded, and the amount to be paid ascertained; the agreement to pay upon a consideration passing from the debtor to the party undertaking to pay is presumed to be adequate; in effect, he has received from the debtor money with which to pay his creditor, and, if permitted to plead usury or other defense and avoid the debt, the effect

would be to permit him to retain the money, or consideration given by the debtor with which to make payment; clearly he should not be permitted to do this. Nor do we understand the counsel for Wormley and Ussery as controverting the correctness of this position, but they insist that, under the peculiar circumstances of the case here presented, the rule does not apply. There was no stipulated sum agreed to be paid to the bank, the amount due was to depend upon a settlement thereafter to be made. Wormley and Ussery were personally interested in this settlement, because, as part of the same contract, Saffarans, who contracted to pay the bank debt, also contracted to pay the notes of Wormley and Ussery upon the same security. It was not intended by the parties, but would defeat such intention, to permit Saffarans to pay more than was justly due the bank, which, if done, might exhaust the whole security given in payment of the bank debt, and leave the debts of Wormley and Ussery without security upon which alone they must rely for payment.

Saffarans, Wormley and Ussery were all made parties defendant. Saffarans does not interpose the defense of usury, because, by the terms of the deed of trust, the lien given upon the Nodina Place is limited to $17,000, and he cares not whether the bank or Wormley and Ussery get it; but Wormley and Ussery, who are interested in seeing that the bank debt should be reduced to the sum that by law they are bound to pay, do interpose the defense of usury by cross-bill; they charge that the land was originally bound for the payment of their own debt, due by Saffarans to Wormley, Pickett & Co. for the payment of the purchase money for the same land conveyed in trust, and should not be charged with the amount of usurious interest claimed by the bank, and secured as a preferred claim by the deed of trust.

Let us look at the facts disclosed in the case, and see whether they sustain Wormley and Ussery in this proposition.

Wormley, Pickett & Co. were the owners of a debt on McGa-vock, the payment of which was secured by a lien on the Nodina Place. Under a decree for a sale of the land for the payment of this debt, Saffarans became the purchaser at the price of $26,100; he paid nearly $10,000, and gave to Wormley, Pickett & Co. his note for the balance of the purchase money; the payment of these notes was secured by a lien upon the land. A short time after this, Wormley, Pickett & Co. made a settlement of their partnership affairs as between themselves, in which the firm was found to be indebted to Wormley and Ussery. An estimate was made of the assets of the firm, and the debts they owed, from estimates furnished by Pickett, to whom had been assigned the duty of liquidating and settling the debts of this, and preceding firms, of which they were members.

With this showing of the assets and the debts to be paid, of which the notes for the purchase money on Saffarans were a part, Wormley, Pickett & Co. proposed to Saffarans that they would give up the notes which they held for balance of purchase money, if he, Saffarans, would give to Wormley and Ussery each two notes for $2,500 at six and eighteen months, making a total of $10,000, the payment of which he was to secure by mortgage on the Nodina Place.

By the delivery of the notes for the purchase money, and the new undertaking of Saffarans, the contract was substantially this: Saffarans was to take the land and the assets of the firms of Wormley, Joy & Co. and Wormley, Pickett & Co., and assume the payment of the debts of the firm, and the $10,000 found to be due on settlement to Wormley and Ussery, two of the members of the firm, to be secured by a mortgage lien upon the Nodina Place.

This, with other stipulations which need not be noticed in this connection, was the contract of 28th May, 1870.

The terms of the contract were to pay the outstanding indebtedness of the firm, including the $10,000 to Wormley and Ussery, with the exception of which no particular debts or amounts were named, nor any preference to be given to any in payment; it was to carry out this contract of May, 1870, that the deed of trust was executed, and which in express terms states, that it is made in accordance with such agreement, but, upon examination, is found to depart from the terms of such agreement in several important particulars; instead of creating a general lien in favor of Wormley, Ussery and the creditors of the firm, the deed classifies the debts, making part of them, including the bank debt, preferred, or first to be satisfied, and those of Wormley and Ussery of the second class for payment.

The amount of the debt due by the firm to the bank, was not ascertained, and, by express terms, made to depend upon an after settlement.

At the time Saffarans assumed to pay the bank debt, no settlement had been made, and consequently the ascertainment of the sum to be paid was confided to him, which was in its nature a trust or agency imposing upon him a duty to see that the sum claimed by the bank was not more than it was legally entitled to. It was certainly not intended that he should silently submit to pay any amount the bank might choose to present for payment, and particularly so after he had departed from the terms of the agreement of May, 1870, by having inserted in the deed of trust a clause exempting the land from the payment of more than $17,000, because the firm debt being placed in the deed as of the first class, might, by an enhanced charge upon the trust fund, leave the debt of Wormley and Ussery unsatisfied.

Under the state of case thus presented we must consider Saffarans as having imposed upon himself a trust and duty to see that in the settlement of the bank debt, no greater amount was

charged than the firm was legally bound to pay; it was, therefore, the duty of Saffarans to interpose every lawful defense which the firm, had no such undertaking by Saffarans been made, might have interposed. Having failed to do which, Wormley and Ussery, when sued by the bank, in an action which put in issue the amount which they owed, and which, when reduced to judgment, was to become a charge upon the trust fund, were directly interested in reducing the amount to be recovered to the sum actually due; not alone on this account but also because they were personally charged with the payment of any balance which might remain unpaid after exhausting the trust funds; such being the case, they had not divested themselves of all personal interest in the payment of the debt.

When summoned to answer, they say, that part of the sum charged against them by the bank is for usurious interest.

Counsel deny the right of Wormley and Ussery to interpose this defense, because it is personal, and they having parted with all personal interest in the payment of the debt, by contracting with Saffarans to pay it, have lost all right to interpose the defense of usury, and that Saffarans has no right to do so, because, having for an adequate consideration undertaken to pay an ascertained debt, he is estopped by his contract from denying the validity of the debt, or, of interposing a defense which is personal to the debtor. Thus it will be seen that the defense is technical and rests upon the ground that the debtor has parted with his personal interest in making payment, and has thereby lost his right to interpose the defense; but when such is not the case, when by the terms of the contract there are rights and interests reserved, which can only be protected by the party who has contracted to pay the debt, or by the debtor himself, a very different question is presented.

These defendants are brought before the court; Saffarans declines to interpose the defense; Wormley and Ussery do interpose it; they are charged as parties in interest by the complainant, in the language of the complaint: "For reason that defendants Wormley and Ussery, as members of the firm of Wormley, Pickett & Co., were, and still are individually liable, and responsible for the payment of the first-class debts."

The bill sets out these debts, of which the bank debt is one. The bank alleges that the debt is unsettled, that the sum due is to be ascertained, and pray a sale of the land conveyed in trust, for its payment; under the same contract by which Saffarans was to take the lands as a consideration for paying the debt to the bank, and to secure the payment of it by a mortgage upon the land, it was stipulated that the debts of these defendants should be paid. The equitable and legal rights contracted for, and reserved by these defendants, carry with them by necessary implication, the rights to avail themselves of all the legal remedies to which, by law, they were entitled, to carry them into effect.

Without questioning the correctness of the decisions cited by counsel, which deny to the debtor the right to interpose the personal defense of usury, when the debtor has parted with his interest in the debt, making a contract for its payment in ordinary cases, we think that the facts before us, in this case, make it clearly an exception. In order to the better understanding of which we should keep in mind the fact that this is not a suit to recover money paid upon a usurious contract, nor to enjoin the payment of money, for the payment of which a judgment has been rendered; but it is interposed as a defense against the recovery of usurious interest; making a much stronger case than many in which the plea has been sustained.

To several of which we will refer: In *Tiffany* v. *Boatman's Institution*, 18 Wallace, 375. One Darby borrowed from the institution at usurious interest, a sum of money, became involved in debt, and upon petition was adjudged a bankrupt. Tiffany was appointed trustee, and filed a bill against the Boatman's Institute to recover money which Darby had paid upon such usurious transaction. The complaint was for more than the usurious interest paid.

Upon this state of case Mr. Justice Davis, who delivered the opinion of the court, said: "If more than legal interest is taken, and suit is brought to enforce the contract, and the plea of usury is interposed, the whole interest is forfeited. * * * The debtor is not released from his obligation to pay, but the interest is diverted from the parties to school purposes. If, however, the borrower suffers judgment to go against him without pleading usury, or if, without suit, he pays the usurious interest, he cannot, either at law or in equity, maintain an action for its repayment. * * * But it does not follow, in cases of usury, if the contract be executed, that a Court of Chancery on application of the debtor, will assist him in recovering back the principal and interest; to do this would be to aid one party to an illegal transaction, and deny redress to another. Courts of Equity have a discretion on this subject, and have prescribed the terms on which their powers can be brought into activity; they will give no relief to the borrower if the contract is executory, except on the condition that he pay to the lender the money lent with legal interest; nor, if the contract be executed, will they enable him to recover more than the excess he has paid over the legal interest."

If such is the rule, when the contract of usury is executed by the payment of money usuriously exacted, with still greater force it should be applied where nothing has been paid, and when

the debtor is called upon to answer in a Court of Equity, what amount he should be required to pay, and to what extent it should become a charge upon the trust fund.

The debtors do not, in this instance, seek to recover back money which has been paid, nor do they ask to have returned to them the money which they borrowed; nor the legal interest which has accrued, but only that the debt be purged of the usurious interest charged against them; such being the case, it comes within the rule recognized by Judge Davis, when he says: "Courts of Equity have a discretion on the subject, and have prescribed the terms on which the power can be brought into activity."

Why, in good conscience, should the rule not be applied in this case? That these defendants contracted with Saffarans to pay this debt, does not make it the less usurious, or iniquitous on that account. The bank is not asked to abate one cent of the principal or legal interest; it gets it all, and under the state of the pleadings has its debt preferred for payment, over the debts of these defendants.

Limited in its extent and purpose, as we have indicated, we think the defense of usury properly interposed. In thus holding, we do but affirm our previous decision, *Ruddell et al.* v. *Ambler*, 18 Ark., 369.

It is contended by counsel that conceding the defense of usury to be good, if interposed within two years, as such was not the case, the action, or, more properly, the defense, was barred by limitation. Sec. 5198, Revised Statutes of the United States, provides that "The knowingly receiving, reserving or charging a rate of interest greater than that fixed by the laws of the State or Territory in which the bank is located, shall be held and adjudged a forfeiture of the interest which the note, bill, or other evidence of debt carries with it, or which has been agreed to be

paid thereon," and, if a greater amount of interest has been paid than is lawful, twice the amount so paid may be recovered back, " Provided, suit be brought within two years from the time the usurious transaction occurred."

It will be seen that the *first* clause gives the right to defend against the recovery of interest; the *second* the right to sue for and recover money which has been paid on such usurious contract, provided, etc.

We think the limitation relates, exclusively, to actions brought to recover money paid, and not to a defense against a recovery; because, if intended to apply to the defense against usury, it would give to the party holding a usurious contract the advantage of cutting off the defense by postponing his suit until after the two years had expired.

If we do not mistake the position of counsel for the bank, they question the right of the State Courts to determine this question of usury, because the defense is set up under an act of Congress, to a violation of which a penalty is imposed, and of which the Courts of the United States, alone, have jurisdiction.

We do not understand the decisions referred to as sustaining this position; they do hold, however, that when suit is brought in a State Court, to avoid the usurious interest prohibited by the Act of Congress, that the Act of Congress, and not the Statutes of the State in which the suit is brought, must be interposed.

Thus, in the case of *The First National Bank of White Hall* v. *Lamb et al.*, 57 Barbour, N. Y., 429; it was held that the Statutes of New York, against usury, do not apply to loans made by a national bank. See, also, 64 Penn., 563. The jurisdiction of the State Courts to try the case is not questioned in either of these, or any other case.

There are also credits claimed, growing out of the sale of the warehouse property, and of taxes, to be taken into account in the settlement of the bank debt, which we must consider in connection with the claim to credits and abatement of the debt on account of usury in order to a proper understanding of the amount actually due.

It seems that the firm were the owners of a warehouse in Memphis, Tennessee, and to secure the payment of the notes executed by Wormley, Pickett & Co., amounting, in the aggregate, as we have seen, to the sum of $19,354.80, they executed to the bank a mortgage on the warehouse property, which they had previously encumbered by a conveyance in trust to Phillips, to secure the payment of a debt due Lewis, Daniels & Co. Eliza Proudfit had, also, at the time levied an attachment upon Pickett's interest in the property; in addition to this, a city tax had been levied upon it, the validity of which was then being litigated. Phillips, under the deed of trust to him, sold the warehouse property, which was bought by White, for the bank, at $18,000, out of which Lewis, Daniels & Co.'s debt was paid. On the same day the sale was made, an agreement was entered into between Wormley, Pickett & Co. and the bank, by its agent, Wm. H. Cherry, President, as follows: *First*—The $18,000 by White, for the property, is appropriated as follows: $176.75 commission to trustees, and for stamps; $1910.19 to pay Lewis, Daniels & Co.'s debt; $8,113.06 to the extinguishment of the Pickett and Wormley, Joy & Co. debt due the bank; and $7,800 are reserved to pay off attachment levied on Pickett's interest in the warehouse property, at the suit of Eliza Proudfit, then pending in the Supreme Court, and if said amount of $7,800, or any part of it, shall not be needed to pay off said attachment or judgment in order to release the property of the same, then the bank agrees to apply said sum, or whatever amount might not be needed for

that purpose, to the satisfaction of so much of the notes of Wormley, Pickett & Co.; and it was further agreed that if the Nicholson pavement tax should be held invalid, then the sum needed for the payment of the same should also be credited on the Wormley, Pickett & Co. notes.

Such was the agreement of the parties, with regard to further credits out of the sum of $7,800, reserved as aforesaid. About the credit of $8,100.06, there is no contest—leaving the question as to how much of the $7,800 should be applied to the payment of these debts.

The bank contends that at the time of its purchase of the warehouse property, it was encumbered with $2473 taxes, which it was required to pay, and this sum should be deducted from its bid of $18,000.

It will be seen that in the agreement between the parties, after the property was bid off, no deduction or reservation was to be made for the payment of back taxes; in the absence of which, the $7800, of the sum for which the warehouse property was sold, and withheld to meet certain contingent liabilities, should be applied according to the terms of the agreement, after paying which, the balance to be applied as a credit upon the notes due to the bank.

The bank as purchaser at the trust sale, took the property cum onere, got just such a title as the trustee had, with all its encumbraces. A trustee only sells such title as he received from his grantor, and can convey none greater. His rights are derived from the instrument creating the trust. 2d Washburn Real Pro., 482; *Balis* v. *Perry,* 51 Mo., 449.

If a trustee takes property encumbered with prior liabilities, he sells the property with these resting upon it, unless removed before sale.

It is the English Chancery Practice, when a sale of property is decreed to be made, to require that prior encumbrances be paid, so as to expose the property to an unencumbered sale, at its full value. The same practice has been adopted in several of the states, and perhaps in all of them may be required, in the exercise of the sound discretion of a court of Chancery.

Where property is levied upon and sold under execution, the rule *caveat emptor* applies, the purchaser takes the property, subject to all encumbrances, gets only such title as the defendant in execution had. *Allen* v. *McGaughey*, 31 Ark., 252.

A junior mortgagee may sell subject to the payment of a prior encumbrance. Willard's Equity, 448.

In *Scott et al.* v. *Shy*, 53 Mo., 478, it was held, that taxes are a legal charge upon the estate, which might, and should have been paid before the sale ; but as this was not done, the purchaser at the trust sale took the land subject to this encumbrance.

When the warehouse property was sold, it was encumbered with unpaid taxes, and as we presume, was purchased for less on that account.

It follows therefore, that there is no charge upon the sum bid for the property on account of taxes then due. The fact that in the mortgage given by Wormley, Pickett & Co. to the bank, the firm did agree to pay taxes, imposes no obligation upon them under this sale, because not made under their deed, but under one containing no such covenants.

It is next contended for the bank that the sum of $1984, reserved to pay Nicholson pavement tax, should not be applied as a credit on the notes given by Wormley, Pickett & Co. to the bank, but upon what ground we are at a loss to conceive; the pavement tax was held by the Supreme Court of Tennessee to be illegal, not a proper charge upon the lot, and it was expressly

agreed that if held to be invalid, Wormley, Pickett & Co. were to have a credit for the amount upon their notes.

But for these contingent liabilities the whole amount for which the warehouse property was sold, would have been credited upon the notes; the only contingency that did arise was the payment of the attachment suit for $2200, which taken from the $7800, leaves a balance of $5600 to the credit of Wormley, Pickett & Co., making a total credit of $13,713.06.

In addition to this it is contended for Wormley and Ussery, that because of the usurious interest charged, they are not bound to pay any interest whatever, under the statute which declares such to be the penalty for a violation of its provisions. Such would certainly have been the case if the defense had been interposed in a suit at law; but this suit is brought in equity, to subject the lands conveyed in trust to the payment of these debts; and although it is true, that the bank is required to establish their debt as a basis of relief in equity, the plea of usury is interposed by Wormley and Ussery in the cross-bill; they appeal to the Court of Chancery to do them justice, to relieve them from the imposition of an usurious and unjust charge of interest and a penalty for violating the statute, also, all the legal interest.

It must be remembered that in this appeal to the court for equitable relief, they invoke another rule, which requires of them to do justice to their opponents. Thus in the case of *Parsons v. Barclay*, 23 Ala., 537, it was held that if the borrower comes into equity for relief against an usurious contract, he will be compelled to pay the amount of principal and legal interest thereon, and if the debt is secured by mortgage, the mortgage will stand as security for the principal and legal trust. 22 Wallace, 127; 18 Ark., 368; 18 Wallace, 385.

That usurious interest was charged from time to time and added to the principal debt whereby the transaction became

usurious, we have held to be sufficiently established, the excess of interest should be abated, and the firm of Wormley, Pickett & Co. charged with balance of principal (if any), and 6 per cent. interest thereon, which sum is a proper charge upon the assets of Wormley, Pickett & Co., placed in the hands of Saffarans, and a charge upon the trust fund created for its payment according to the equities of the parties under the deed of trust, so reformed as to appropriate the assets, including the lands, according to the contract of May, 1870, without reference to the limitation of $17,000 upon the land.

As between the parties, it appears under the settlement of May, 1870, that independent of the sum of $10,000, assumed by Saffarans to be paid to Wormley and Ussery, Pickett was to give his note to Wormley for $6100, and also an old claim due Pickett, Wormley & Co. for $1000. For the payment of this sum Pickett was to become personally responsible; no provision was made for their payment by mortgage or otherwise. It is contended for Wormley that Saffarans is only a nominal party acting for and in the interest of Pickett, who in fact is the real owner of the assets of the firm, covered under transactions made at his instance and procurement, and that the lands purchased by Saffarans, and by him conveyed to Mrs. Pickett and her daughter, are in fact the property of Pickett, and should be held responsible for his debt to Wormley. .

If these allegations were sustained in proof, such might be the equitable rights of Wormley as to entitle him to satisfaction out of the land. There are evidently many facts and circumstances connected with this transaction which conduce to show that the lands were bought for the benefit of Pickett and his family; he was the principal book-keeper of the firm of which Wormley and Ussery were members, charged with the liquidation of the firm affairs; he procured Saffarans, who was without capital, to

bid for the Nodina Plantation, and urged Wormley and Ussery, who were present, not to bid against him. At the time of the settlement in May, 1870, he prepared and presented an exhibit of the debts of the firm upon which the settlement was made; after the assets were turned over to Saffarans, he was the active agent and counsellor in the collection and disbursements of the assets. At the time the deed of trust was executed, he alone of the firm was present, participated in procuring the deed which professed to be made under and in accordance with the agreement of May, 1870, but which departed from it by making certain parties preferred creditors, and postponing those of Wormley and Ussery until such preferred debts, including that of the bank, were satisfied out of the trust fund, and by limiting the extent of the trust liabilities on the land to $17,000; nine days after which Saffarans conveyed the same land to Mrs. Pickett and her daughter, making the consideration of the purchase on their part an assumpsit to carry out and perform the obligations assumed by Saffarans.

These are all circumstances which tend to show that Pickett was the real party in interest; but on the other hand, we have sworn statements of both Pickett and Saffarans that the purchase was made by Saffarans for himself, and that the first payment of $10,000 was funds procured by him.

This evidence stands uncontradicted by any direct evidence, and is entitled to a controlling influence in the determination of the question of purchase.

In addition to this, Wormley and Ussery are estopped from questioning Saffarans' purchase by their subsequent contract with him, in which he is recognized as the legal owner of the property.

So far as the note of $6,100, and the $1,000 note, are concerned, Wormley must look to Pickett alone for settlement.

It is shown that Wormley has taken up and paid several small amounts which Saffarans had assumed to pay, as follows, one to Warren for $262.92, cost $39.39; to. Hill and Lowe, $50; to Cole, $9.40; and to F. M. Harden part of original purchase of Nodina Place, $708.12. These were all proper charges against the firm, for the payment of which its assets were chargeable. Wormley having paid them will be subrogated to all the rights of these creditors.

It is claimed for Ussery that, in addition to the sum of $5,000 to be secured by a mortgage on the Nodina Place, there was due to him the sum of $3,000, for which a note by Pickett was to be given, secured satisfactorily to Thomas R. Smith; this debt was not to be secured by a lien upon the land or partnership assets conveyed to Saffarans. No provisions for its payment were made other than that approved by Smith. This stipulation, if not complied with, might have been insisted upon by Ussery in avoidance of the contract of May, 1870, but created no lien upon the assets conveyed to Saffarans, or individual liability upon him.

In addition to these sums Ussery claims to have paid $14,000 of the firm debts which Saffarans contracted to pay, and for the payment of which a lien was given on the Nodina Place, which, if sustained by proof, entitle him to be subrogated to the rights of such creditor.

Counsel for Mrs. Pickett and her daughter claim that they are innocent purchasers, who have at all times been willing to comply with the terms of the trust deed, and, as far as practicable, have done so, and are now ready under the directions of the court to comply with its directions.

There is no view in which their claim to the property can be presented which entitles them to protection as innocent purchasers for a valuable consideration paid; at most, Saffarans did but turn over his liabilities and purchase to them with all the

responsibilities, which, by the terms of his undertaking, rested upon him.

As between Mrs. Pickett and her daughter, and the beneficiaries in the trust deed, the property acquired by them from Saffarans under his contract of May, 1870, with all the liabilities attached to it, if complied with, may stand; they have held the lands, received the rents and profits, and may continue to do so subject to the liabilities incurred under the deed of trust, so modified as to conform to the contract of May, 1870.

Under this view of the case we think the decree of the Chancery Court of Mississippi County should be reversed and set aside and a decree rendered in accordance with the equities of the parties as already indicated.

Let the deed of trust executed by Saffarans which purports to be made in compliance with the contract of May, 1870, be so reformed as to make it conform to said contract; so far as may be necessary to fix a liability upon Saffarans, or Mrs. Pickett and her daughter as his successors in interest, to pay the debts.

Wormley and Ussery have attempted, by their pleadings, to go behind their settlement and transfer of the assets of the firm to Saffarans, on the 28th of May, 1870, and bring him to account for the amount of the assets of the firm collected by him, and the manner in which he has appropriated them. And a large amount of testimony has been taken to establish these allegations; but from the view which we take of the rights and liabilities of the parties, no such issue can be raised, because, the entire outstanding debts of the firm were absolutely transferred to Saffarans, as well as the land. They were to be his, unincumbered, only that the lands were charged by mortgage with the payment of the debts which the firm owed, and the $10,000 to Wormley and Ussery. It was a matter of no concern to them, whether Saffarans collected the debts, or not, whether he

paid the debts of the firm with the money collected out of the assets purchased, or out of other means.

It was a sufficient performance of his undertaking, that the debts of the firm were paid, and the $10,000 to Wormley and Ussery; such payments were not to lessen the liabilities of the lands, if necessary to be sold for that purpose. Every debt which the firm owed, paid by him, to that extent removed the lien on the land, and could not, because taken up, become a charge upon it. Mrs. Pickett and her daughter, who assumed the liabilities of Saffarans, and took the Nodina Place thus encumbered, became bound to discharge and pay these debts, as fully and to the same extent as Saffarans was, and could no more charge the trust fund with repayment than Saffarans could have done.

The proposition of Mrs. Pickett, to subrogate her to the rights of the creditors, whose debts she had paid, cannot be entertained; if so, she or Saffarans could have at once taken up all of the debts of the firm, and charged them as debts, for which they were entitled to satisfaction, out of the lands which had been encumbered for their payment, and which they had paid as a part consideration for the land itself. According to the contract of Saffarans, he was bound to take up and extinguish these debts; when taken up, they became extinguished, and ceased to be a charge upon the lands; not so, however, when a third party, who was under an obligation to pay, does so, and takes the debt; as to Saffarans, it is still a debt, one which he undertook to pay, and having failed to do so, it became a charge upon the land for payment.

Mrs. Pickett could occupy no better position; she has no right to charge the trust estate with the debts which she bound herself, as the representative of Saffarans, to pay.

Having disposed of this branch of the case, the only question to be settled is, the true amount of the debt of the firm, and $10,000 due the defendants Wormley and Ussery. In determining which, the most material matter to be settled is the amount of usurious interest charged by the bank, and constituting in part the amount claimed by it for the payment of which a lien was created upon the Nodina tract.

And because that, as well as the amount due to Wormley and Ussery, should be ascertained and computed. It is ordered that the clerk and master of this court, from the records, pleadings, evidence and exhibits, do make an estimate and calculation of the amount of interest charged, exceeding 6 per cent., upon the loans and advancements made by the bank to the firm, and what amount is now actually due to the bank, purged of such usurious interest, and after allowing all the credits to which the firm is entitled according to the evidence, calculating interest on the sum found to be due the bank, purged of usurious interest, from the time it became due, at 6 per cent. interest, until the first payment, then apply the payment to the extinguishment of the interest, and the excess, if any, to the payment of the principal debt, and so with regard to each payment. In regard to the time when the $7800, reserved to pay contingent liabilities, is to be credited, the amount will be considered as a payment less $2200 paid on the Proudfit claim.

The debts due to Wormley and Ussery will be calculated separately, allowing each of them interest on their debts of $5000 from due. That of Wormley until the present time, and Ussery's up to the time he was paid $1000 from which that sum is to be deducted, and the balance with interest until this date.

The Master will also allow to each of them interest on the debts of the firm, paid by them, which were a charge upon the trust fund, at the rate of 6 per cent., and report the amount due

them, and the amount of interest thereon, and if upon reference to the records, pleadings, evidence and exhibits it should be found that the evidence is not sufficient to enable him to report fully, he will report the particular facts, not established by evidence, to the court; otherwise, report to this court the estimates made by him, at his earliest convenience.