FARMERS' & MECHANICS' SAVINGS COMPANY *v.* BAZORE.

Opinion delivered December, 9, 1899.

1. CONFLICT OF LAWS—PLACE OF CONTRACT.—The fact that the local agent of a foreign loan company wrote to an applicant for a loan the terms upon which his company would make a loan, and that such terms were accepted in this state by the applicant, does not constitute the loan an Arkansas contract if the application was made subject to the approval of, and was approved by, the board of directors and the general attorney of the loan company in the foreign state. (Page 258.)

2. LOAN—VALIDITY.—A loan valid under the laws of the state where it was executed is valid in this state, though, if executed here, it would be usurious. (Page 259.)

3. USURY—WHO MAY PLEAD.—One who buys his partner's half interest in a tract of partnership land, and as a consideration therefor assumes all of the partnership debts, among which is a debt secured by mortgage on the land, cannot plead usury as to his partner's half interest in the land. (Page 260.)

4. CONTRACT—LOCI CONTRACTUS.—A loan executed in another state will not be an Arkansas contract, though it is secured by land lying in this state. (Page 260.)

Appeal from Boone Circuit Court in Chancery.

BRICE B. HUDGINS, Judge.

STATEMENT BY THE COURT.

The appellees executed to the appellants their promissory note, which reads as follows:

"Springfield, Mo., Sept. 20th, 1894.

"Sixty months after date, I promise to pay The Farmers' & Mechanics' Savings Company, of Springfield, Mo., $2,500, for value received, with interest from date at the rate of six per cent. per annum, payable in monthly installments, on the fourth Saturday of each month; and I promise to pay said company sixty monthly dues of $50 every month, as stockholder in said company, upon fifty shares of stock, which I agree to carry until the loan is fully paid, with all the penalties of said stock, according to the by-laws and prospectus of said com-

pany. I further agree to pay said company the sum of $25 every month (for) sixty months, being the premium for this loan.    [Signed]    ."T. E. WILSON,    MARY E. WILSON,

"A. D. BAZORE,    MARY A. BAZORE."

At the same time they executed to C. E. Boyden, as trustee, their deed of trust upon lands in Boone county, Arkansas, to secure the payment of said note.

The appellees brought the bill in equity to cancel said deed, alleging that said note and deed were usurious and void, stating that the said contract was executed in Boone county, Arkansas; that they had paid on the principal sum of $2,500, six hundred dollars as dues on stock in said company, and $388.75, interest and premium, and that the sum of $1,900 is now due and owing on said $2,500 principal. They charge that the company corruptly charged and demanded and exacted more than ten per cent. per annum, and that said deed of trust was a cloud upon their title to the lands conveyed, and prayed that the deed of trust and note be canceled, and that they have judgment for costs.

The defendants denied that the contract was usurious, and denied all allegations and charges of the complaint, and said that said contract was not executed in Boone county, Arkansas, but that, on the contrary, it was executed in the State of Missouri. They then, for further defense, filed a cross-bill, in which they state:

"Before plaintiffs could borrow from defendant corporation the said plaintiffs, T. E. Wilson and A. D. Bazore, were compelled to become, and did become, stockholders in defendants' company. And defendants say that said plaintiffs, on the first day of September, 1894, subscribed for fifty shares of stock of said company, with a view of borrowing from said company, and as a part of said transaction of said loan. Defendants say that twenty-five shares of stock were taken, upon which to borrow the sum of $2,500, as required by the by-laws of said company, and the other twenty-five shares were taken by said defendants as investment stock. Defendants say that, by the terms of said subscription and by-laws of said company, the plaintiffs agreed and promised to pay, and to become obligated to pay, as monthly dues on

said stock, on the 4th Saturday of every month, for a period of sixty months, the sum of $50, being $1.00 per month for each share. Defendan's further say that, having so subscribed for said stock, the said plaintiffs filed with the board of directors of said corporation, at Springfield, Mo., their written application for the loan of $2,500, payable sixty months after date. That said application for a loan was acted upon, approved and accepted by the said defendant company at Springfield, Mo., by and through a vote of its board of directors. That thereupon the said plaintiffs delivered to the defendant corporation at Springfield, Mo., the promissory note in said petition described, and delivered to defendant corporation and C. E. Boyden, at Springfield, Mo., the deed of trust in said petition described, and said note and said deed of trust were by said corporation and trustee accepted and received at Springfield, Mo. And defendants say that the said sum of $2,500 was by said corporation paid to said plaintiffs at Springfield, Mo., and the same was by them there and then accepted and received.

"Further answering, the defendant says that, by the terms of said contract, note and deed of trust, the said principal sum was due and payable sixty months after date, and the said plaintiffs had obligated themselves to pay $50 each month upon said stock, and had agreed to pay interest on said sum at the rate of 6 per cent. per annum, payable monthly; that is to say, promised and agreed to pay as interest the sum of $12.50 per month for sixty consecutive months, and also promised and agreed to pay defendant the sum of $25 per month as a premium for said loan for a period of sixty consecutive months. Defendants say that no part of said principal sum was due and payable, except at the option of the plaintiff, until the expiration of the sixty months, when at said period the value of said shares of stock are applied as a lump payment upon said debt, and the money so paid by the plaintiff as dues, interest and premium were used by defendant corporation, and used to enhance the value of the plaintiff's stock. Defendant further says that for the months of September, October, November and December, in 1894, the months of January, February, March and April, in 1895, plaintiffs paid as dues on

said fifty shares of stock the sum of $50 each month, and during the same period paid the sum of $100 as premium on said loan, and on July 10th, 1895, executed and delivered their certain notes for the payment of $100 dues, $25 interest, $50 premium and $5 fines, or a total of $180. Defendants say that on said July 10th, plaintiffs withdrew 25 shares of their stock from their company, and the withdrawal value of said shares at said time was applied, by the direction of plaintiffs, as follows: (1.) The payment of said note for $180, being the dues, interest and premium for the months of May and June, 1895, and the $5 fines, aforesaid. (2.) To the payment of the dues for the month of July, 1895, on the said remaining twenty-five shares, and six other shares not included in said loan; total, $31. (3.) To the payment of interest for the month of July on said loan of $2,500, and to an additional loan of $600, $15.51, and the balance of said withdrawal, together with cash payment of $11, was applied to the payment of the July premium on the said $2,500 loan and on the said $600 loan. Defendants further say that for the months of August, September, October, November, and December, 1895, and January, 1896, said plaintiffs paid monthly dues on said stock of $25 each, and no more. During the same period said plaintiffs paid the monthly sums of $12.50, as interest on said loan, and no more, and during the same period plaintiffs paid the sum of $25 per month premium on said note, and no more,— making a total payment on dues, interest and premium on said twenty-five shares of stock, and the said loan of $2,500, the sum of $912.50. That, at the time of the institution of this suit, there was payable, but not then due, on said note and said deed of trust the sum of $2,500, and there was due and payable and unpaid the sum of $50 for dues on said stock for the months of February and March, 1896, and there was at the said time due and payable and unpaid on interest the sum of $25 for said two months, and there was due and payable and unpaid at said time the sum of $50 as premium for said two months, making a total of $125, exclusive of fines. And the defendants say that, exclusive of fines, there is now due the defendant corporation by plaintiff the following sums: $2,500 principal debt, pay-

able but not due, and the sum of $150 as dues on the said twenty-five shares of stock, $150 as premiums on said loan, and $75 as interest on said loan. Defendants say that, among other provisions of said deed of trust, it is provided that if default is made in the payment of said note, or any part of it, or any of the interest thereon, when due, or any of the dues as stockholders, when due according to the by-laws of the said party of the third part, then this shall remain in force, and the whole of said indebtedness become due and payable according to the by-laws of the party of the third part. Defendants say that plaintiffs have violated conditions of said deed of trust, and plaintiffs are now in default for 6 months past. Defendants state that should the present value of said shares of stock be applied on said principal debt, there would still be due and payable to the defendant corporation the sum of $2,400. Defendants further state that, after the execution of said note and deed of trust, the defendant T. E. Wilson purchased the interest of said Bazore in said property, and, as the sole consideration of said conveyance, assumed and agreed to pay said $2,500 as due defendant corporation, and promised and agreed to pay dues, interest and premium on said stock and loan. Therefore, filing this as an answer as well as cross-bill, defendants pray judgment for $2,875, with interest, and that the equity of redemption be foreclosed, and said property be sold to pay said debt, interest and premium, with privilege accorded said defendant Wilson before sale to repay said debt by applying the value of his stock thereon, and paying the balance in cash, and for such further relief as this court may see meet and proper, and for this your defendant will ever pray."

To this cross-bill the plaintiffs filed an answer, which, amongst other things, denied the allegations of the cross-bill as to (1) the application for the loan and the action of the board of directors thereon; and (2) the delivery of the note and deed of trust and the payment of the money to plaintiffs in Missouri, but alleging the fact to be that all of said transactions took place in Arkansas.

The court decreed that the note and mortgage were usur-

ious and void, and canceled them, and quieted the plaintiff's title to the land.

*T. J. Delaney*, of Missouri, for appellant.

The contract was a Missouri contract. The place of its performance is in Missouri, and the security is only an incident of the debt. Hence the law of Missouri must govern it. 22 S. E. 521, S. C. 91 Va. 706; 11 So. 107; 60 Ark. 278. The law of the place where a contract is approved governs it. 68 Fed. 467; 52 Mo. App. 357; 1 Dan. Neg. Inst., § 865; 13 Pet. 101. Even if the contract be considered as an Arkansas contract, the company being a mutual one, the plea of usury is not available to appellees. 96 Ga. 803, S. C. 22 S. E. 585; 47 Ark. 58; 56 Ark. 354; 96 Ga. 206; S. C. 22 S. E. 701. Nor could Wilson, in any event, invoke the plea of usury as to the half interest he acquired from Bazore for a nominal consideration. 7 Hill, 391; 49 N. Y. 373; 39 Mo. 445; 123 Ill. 510; 32 Ark. 346; 5 S. W. 287.

*De Roos Bailey* and *Arthur N. Sager*, for appellees.

The contracts are Arkansas contracts; because:

(1) The negotiations were carried on here. (2) The proposition of appellant was accepted here. 60 Ark. 276; 44 Ark. 234. (3) They were actually executed here, and, in the absence of a designated place, contracts are presumed to be made with reference to the place of execution. 3 Am. & Eng. Enc. Law, 546[5]; 8 Bush, 193; 2 Har. & J. (Md.) 191; 14 B. Mon. 558. (4) The notes and deed of trust were delivered here. 3 Am. & Eng. Enc. Law, 547; 3 Daly, 288; 13 Fed. 198; 15 Mich. 94; 20 N. H. 140. Delivery to the recorder and recording under instructions of appellant was delivery to it. 81 Ill. 137; 13 Mo. 360; 4 Wis. 537; 12 Pick. 141; 15 Mich. 94; 20 N. H. 140. (5) The money was secured by Arkansas real estate, and used thereon. 2 Am. & Eng. Enc. Law, 331; 17 Wis. 63; 1 Dan. Neg. Inst. § 894; Whart. Con. of Laws, §§ 510, 368; 6 Paige, 627; 9 Allen, 78; 11 Gray, 38; 8 Am. & Eng. Enc. Law. 654; 1 Biss. 337. (6) The appellant was doing business in this state, and should be amenable to its laws. 39 S. W. 656; 116 N. C. 882; 34 S. W. 235.

The contracts are usurious in both Missouri and Arkansas, and are governed by the law of the place where made. 3 Am. & Eng. Enc. Law, 546[6] ; 13 Pet. 65; 10 Wheat. 283; 3 Durn. & E. 425; 22 Ia. 194, 198; 11 Ind. 117. Under the law of Missouri, if the premium paid by the borrower be not freely and openly bid by him, the exaction will be treated as interest, and, if in excess of that allowed by law, will constitute usury. 62 Mo. App. 277; R. S. Mo. 1889, § 2812, art. 9, ch. 42; Thomp. B. & L. Assns. 191, 192, 188; Endl. Build. Assns. 95, 409, 410, 411; 95 Pa. St. 122. As bearing on the question of usury in contracts of foreign companies, see: 25 S. W. 620; *ib.* 622; 68 Tex. 287; 81 Tex. 369; 22 Tex. 128; 26 S. W. 39.

HUGHES, J., (after stating the facts.) The contention here seems to be mainly upon the question whether the contract was a Missouri or an Arkansas contract. The appellee does not contend that the contract was usurious under the laws of both Missouri and Arkansas. The pleadings and evidence show that it was a building and loan contract, and that the appellees, after taking and agreeing to mature $2,500 stock, or, rather, 50 shares of stock, borrowed of the company, upon their written application therefor, $2,500, to be re-paid in 60 months, with interest payable monthly at the rate of 6 per cent. per annum, and agreeing to pay the company 60 months' dues, of $50 each month, and a premium of $25 every month for 60 months, when the stock was to mature. It appears that the company was organized under the statutes of Missouri, authorizing the organization of such building and loan associations, and by and under which statutes and the by-laws of said association, in evidence, such building and loan associations, by their board of directors, were authorized to hold "stated meetings, at which such sums of money as they may determine shall be offered for loan to all the members in open meeting. The shareholders who shall bid the highest for the preference or priority of law shall be entitled to receive a loan whose amount shall not exceed the number of shares of stock held by such shareholder multiplied by the par value thereof." Section 2812. Rev. Stat. Mo., 1889. The loan in

this case seems to have been in accordance with this section and said by-laws. Section 2814. *id.*, provides that "no premiums, fines, or interest on such premiums that may accrue to the said corporation according to the provisions of this article shall be deemed as usurious. And the same may be collected as debts of like amount are now by law collected." So it seems that, under these statutes and by-laws, this company was empowered and authorized to make its organization and become incorporated; to loan money and purchase real estate; to do a building and loan business; to charge interest on money loaned at a rate not higher than ten per cent.; to take mortgages; and to provide for premiums to be paid for loans, and for monthly dues to be paid the company, all upon the money loaned,—and that such should not be usurious, and might be collected as other debts. See above article, and chapter 90, Revised Statutes of Mo. tit. "Interest." So, if this was a Missouri contract, it appears that it was not usurious under the Missouri law, but was valid there; and if valid there, it is valid here, as a contract valid where made is valid everywhere. The *lex loci contractus* governs the validity and construction of a contract.

Was this a Missouri or an Arkansas contract? The note is dated at Springfield, Mo.; and while the place of its date does not afford an absolute presumption that the contract was made and to be performed there, it is, according to some authorities, *prima facie* evidence of these facts, and, without proof to the contrary, the *prima facie* showing prevails in such cases, as in all cases.

The proof shows that there was some conversations had with Newman, the agent of the company to sell stock of the company, in Boone county, Arkansas, by the appellee Wilson, and some negotiations with him preliminary to making application for the loan; that the application was made to the board of directors of the company in Springfield, Mo., and was there passed upon and accepted, subject to approval of the general attorney of the board at Springfield, Mo., who there approved it, before the loan was or could have been consummated; that Newman had no authority to contract for loans. The contention that, because Ellis, the manager for the county, wrote to

Wilson in Boone .county, Arkansas, the terms on which the company would make the loan, and Wilson wrote him from Boone county, Arkansas, that he accepted his proposition, the contract was therefore made in Arkansas, and was an Arkansas contract, we think is not tenable,. considering the evidence that the contract was not binding on the parties until submitted tc and approved by the board of directors, and then approved by the general attorney for the company, all which was done in Springfield, Mo.

In a quitclaim deed for his interest in the property in controversy made by Bazore to Wilson, there was a provision that Wilson should pay all accounts of the firm in which they were partners; and, if this includes the note to the Farmers & Mechanics' Company, Wilson could not be heard to plead usury as to Bazore's half interest. *Pickett* v. *Merchants' National Bank,* 32 Ark. 346. He paid only a nominal sum for Bazore's interest, and the property was quite valuable, worth several thousand dollars. It is unnecessary to determine whether this contract was usurious under the laws of Arkansas, if it had been an Arkansas contract.

The land upon which the deed of trust was given cuts no figure in the case, as the security was only an incident to the debt.

We think the contract was a Missouri contract, valid under the laws of Missouri, and valid here, and that the learned chancellor below erred in holding it to be usurious and void. The decree is reversed and remanded, with directions to enter a decree for amount due, and foreclosing the appellant's mortgage. *Rector* v. *Southern Building & Loan Association,* 98 Fed. 1007.