NORMAN and others *v.* PEPER.

*(Circuit Court, E. D. Arkansas.   July 9, 1885.)*

1. MORTGAGE—USURY—ENJOINING FORECLOSURE.
    When a mortgage given to secure a usurious contract contains a power of sale, a court of equity will not, at the suit of the maker of the usurious contract, enjoin the foreclosure of the mortgage, by notice and sale, for the amount of the debt and legal interest.
2. SAME—STIPULATION TO SHIP COTTON TO FACTOR TO BE SOLD ON COMMISSION.
    A stipulation, in a mortgage given to secure a pre-existing debt, drawing the highest conventional rate of interest, and containing no covenant for advances, that the mortgagor would ship the mortgagee, who was a cotton factor, 700 bales of cotton for sale on commission, and that the mortgagor would pay the mortgagee commissions at the rate of $1.25 per bale on the 700 bales, whether shipped or not, is without consideration and void; and if the cotton is not shipped the factor cannot charge commissions for selling it.
3. SAME—QUESTION OF USURY NOT DECIDED.
    The question whether this stipulation did not render the mortgage usurious is not decided, because its decision one way or the other would not affect the result in this case. The case distinguished from *Cockle* v. *Flack*, 93 U. S. 346.
4. FACTOR—FRAUD—FORFEITING COMMISSIONS.
    A factor who is guilty of fraud in the conduct of his principal's business forfeits all claims to commissions.

In Equity.
*Smoote & McRae* and *E. C. Mitchell,* for plaintiffs.
*Montgomery & Hamby* and *B. B. Battle,* for defendant.

CALDWELL, J.   This is a bill to enjoin the defendant from foreclosing a mortgage, under a power of sale contained therein, executed by the plaintiffs to secure an indebtedness from them to the defendant, amounting, as the defendant alleges, on the tenth of March, 1883, to

the sum of $9,972.88. The grounds upon which the injunction is sought are (1) that the notes secured by the mortgage and the mortgage itself are usurious and void; (2) that, as cotton factor for the plaintiffs, the defendant rendered them accounts of sales which were false and fraudulent in respect to the weight, grade, and price of the plaintiffs' cotton, whereby they were defrauded out of large sums of money; (3) that the defendant failed to account for cotton consigned to him for sale; (4) that the defendant sold plaintiffs damaged, spoiled, and inferior goods, whereby their business was greatly damaged, and that he charged them for such goods the full price for sound goods of like character; (5) that the defendant charged the plaintiff with excessive and illegal commissions and interest.

The bill charges various other frauds on the defendant, which need not be particularly mentioned. Assuming, but not deciding, that the notes and mortgage are usurious, the plaintiffs cannot have the relief they seek, viz., a perpetual injunction against its foreclosure by notice and sale, without first paying or tendering the amount of the debt and legal interest. *Pickett* v. *Merchants' Nat. Bank*, 32 Ark. 346; *Spain* v. *Hamilton's Adm'r*, 1 Wall. 604; *Anthony* v. *Lawson*, 34 Ark. 628. But they are entitled to have the accounts purged of all illegal interest, commissions, and charges. On the twentieth of April, 1882, the plaintiff executed the mortgage in question to secure an existing indebtedness of $9,581.40, evidenced by three promissory notes; and the mortgage contains this provision:

"And whereas, said Norman, Burns & Co. have also covenanted and agreed with said Charles G. Peper to consign to him during the coming cotton season—that is to say, between the date of this conveyance and the same date of the year 1883—at least seven hundred bales of cotton, to be sold by him, said Peper, for account of the said Norman, Burns & Co., from time to time, at the discretion of said Peper, and as he may deem it prudent and proper to make such sales; and whereas, the said Norman, Burns & Co. have also agreed with said Peper, for value received by them, that should they fail to ship and consign to him, during said season, the number of bales of cotton aforesaid, they will pay to him, said Peper, the sum of one dollar and twenty-five cents for every bale of cotton within said number of seven hundred bales which they may fail to ship and consign to him as aforesaid, and which sum of one dollar and twenty-five cents, it is agreed, shall be compensation to him, said Peper, for the commissions which will be lost to him by his not receiving such bales as may be then deficient in the consignment so to be made by said Norman, Burns & Co."

The plaintiffs did not ship the 700 bales of cotton, and the defendant charged them up with commissions at the rate of $1.25 per bale, amounting to $875, and now claims the same as a part of the mortgage indebtedness due him. About a year previous to the execution of the mortgage of twentieth of April, 1882, the plaintiffs made an agreement like that contained in the mortgage of 1882, agreeing to ship a given number of bales of cotton to the defendant, and agreeing to pay $1.25 commissions per bale on the difference between the number of bales they should actually ship and the number they had agreed

to ship. The commissions charged up under the last-named agreement on cotton not shipped or sold, and carried into the mortgage debt, amounted to $523.75. These charges for commissions for selling cotton which was not sold are clearly illegal. The rule established by the case of *Cockle* v. *Flack*, 93 U. S. 346, does not apply. In the case at bar there was no agreement for a joint use of capital and personal service of the defendant based on a loan made at the time. The mortgages were given to secure debts previously contracted. There was no agreement for future advances. This existing indebtedness the plaintiffs were to pay, with interest at the rate of 10 per cent. per annum, the maximum conventional rate.

The additional agreement of the plaintiffs, contained in the mortgage and quoted above, to ship the defendant 700 bales of cotton, and to pay commissions at the rate of $1.25 per bale on every bale of that number not shipped, was without consideration and void. Whether it renders the mortgage usurious is not decided, inasmuch as the decision of that question could not affect the decree to be rendered. Whether the agreement to pay these commissions is void for want of consideration or for usury, the result is the same in this case.

It is proved by two expert accountants, who examined the defendant's books as they stood at the date of the examination, that he received for a portion of the plaintiffs' cotton $609.60 more than the account of sales rendered by the plaintiff show that he received for the same. In other words, he rendered accounts of sales of a portion of the plaintiffs' cotton showing he had sold it for $609.60 less than he in fact received for it. The defendant's books, so far as they relate to the plaintiffs' accounts, are not complete. The witness says: "The journal refers specifically to pages 85, 86, and 87, copy-book of accounts of sales for the calculations of the interest and amounts. I find that pages 84 to 92, inclusive, of this copy-book are cleanly cut out, and no examination can be made of them." The information contained in the missing leaves was not contained in any of the other books or papers of the defendant. The experts were unable, therefore, to determine the difference, if any, in the prices for which the remainder of the cotton was sold and the prices at which it was accounted for. The method by which the defendant realized and retained more for the plaintiffs' cotton than he accounted for seems to have been quite systematic and uniform, and to have entered into all the sales of the plaintiffs' cotton, the history of which can be traced on the plaintiffs' books. It is but fair to assume that this uniform method obtained as to the cotton the sales of which cannot be fully traced on account of the mutilation of the defendant's books. On this assumption the plaintiffs are entitled to a credit for $217.86 for the difference between the price received and the account of sales rendered on the cotton the facts relating to the sales of which were contained in the missing leaves. "Everything is presumed against the despoiler." The depositions of the experts were in the possession or subject to the

inspection of the defendant and his clerk for two weeks before the taking of depositions in St. Louis, the place of their residence, was closed, and one of them was examined, and both might have been, after said depositions were taken, but no attempt was made to explain or contradict the testimony of the experts on the points mentioned.

By his fraud and misconduct as factor for the plaintiffs the defendant has forfeited all claims to any commissions for conducting the business. *Fordyce* v. *Peper*, 16 FED. REP. 516. The commissions charged over and above those charges for cotton not sold are $891 for cotton sold, and $530.59 on purchases. The experts testify that the interest account is excessive in the sum of $282.13.

Much proof was taken as to the character and quality of goods purchased by the defendant and shipped to plaintiffs. It is undoubtedly true that some of these goods were not merchantable, and that the defendant knew it, and that the plaintiffs suffered some loss by them. But their character and quality were known to the plaintiffs and made a matter of complaint before they gave their notes, and I am not inclined to open up a question of that kind after it has been deliberately settled by the parties with a full knowledge of all the facts. The defendant's claim must be reduced by the following amounts:

| | |
|---|---|
| Commissions charged for selling cotton not sold, | $875 00 |
| " " " " " | 523 75 |
| Commissions for selling cotton, | 891 00 |
| Commissions on purchases, | 530 59 |
| Amounts received for cotton sold and not accounted for, $609.60 and $217.88, | 827 48 |
| Excess of interest charged in account, | 282 13 |
| | $3,929 95 |

These sums, amounting in the aggregate to $3,929.95, will be credited on the mortgage debt; the $875 as of the date it is charged, and the balance as of the fifth of April, 1882, and as to these amounts the injunction will be made perpetual. As to the balance of the mortgage debt the injunction is dissolved. As the defendant's misconduct and fraud compelled the plaintiffs to bring this suit, and they have maintained their bill as to a material part of the relief sought, the defendant will be required to pay all costs.