## HUSSEY v. RICHARDSON–ROBERTS DRY GOODS CO.

(Circuit Court of Appeals, Eighth Circuit. October 16, 1906.)

### No. 2,365.

1. APPEAL AND ERROR—REVIEW—FINDINGS OF FACT.

When the trial court has considered conflicting evidence and made its finding and decree thereon, it will be taken as presumptively correct, and will not be reversed on appeal unless an obvious error has occurred in the application of the law, or a serious and important mistake has been made in consideration of the evidence.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 3, Appeal and Error, §§ 3955–3969.]

2. BANKRUPTCY—VOIDABLE PREFERENCE—KNOWLEDGE OF CREDITOR.

A mercantile creditor had sold a bankrupt goods for only a few months prior to his bankruptcy. He was slow in making payments, and, learning that he had placed a mortgage on his stock, the creditor sent an attorney to look after the claim. The bankrupt stated to him that he did

not have sufficient capital to meet his bills promptly, but was doing a profitable business and was entirely solvent; that he had an offer for his stock in cash and land amounting in value to a sum largely in excess of his indebtedness, which he could accept at once. The attorney advised its acceptance and meantime took a chattel mortgage on the stock for the amount of his claim. The debtor was, in fact, insolvent, and became bankrupt within four months thereafter. *Held*, that such facts supported a finding of the District Court that the creditor did not have reasonable cause to believe, when the mortgage was taken, that a preference was intended, and that it was not voidable under Bankr. Act 1898, § 60b, 30 St. 562 [U. S. Comp. St. 1901, p. 3445].

3. SAME.

The fact that a debtor was adjudged a bankrupt on the ground that the giving of a chattel mortgage was a preference and an act of bankruptcy is not conclusive that such mortgage is voidable under Bankr. Act 1898, § 60b, 30 St. 562 [U. S. Comp. St. 1901, p. 3445].

Appeal from the District Court of the United States for the District of Kansas.

Joseph V. C. Karnes, Alexander New, Edwin A. Krauthoff, and W. S. McClintock, for appellant.

R. E. Culver, for appellee.

Before SANBORN, HOOK, and ADAMS, Circuit Judges.

ADAMS, Circuit Judge. The only question in this case is whether a just demand held by Richardson-Roberts Dry Goods Company against the bankrupt, Sowers, and secured by chattel mortgage, should be allowed as a secured or general debt against the estate. That depends upon whether the mortgage constituted a voidable preference under the provisions of the bankruptcy act of 1898 as amended. Section 60 (a) of that act (act July 1, 1898, c. 541, 30 Stat. 562 [U. S. Comp. St. 1901, p. 3445]) defines a preference as follows:

"A person shall be deemed to have given a preference if, being insolvent, he has within four months before the filing of the petition * * * made a transfer of any of his property, and the effect of the enforcement of such * * * transfer will be to enable any one of his creditors to obtain a greater percentage of his debts than any other of such creditors of the same class."

Section 60 (b) of the act defines a voidable preference as follows:

"If the bankrupt shall have given a preference, and the person receiving it * * * shall have had reasonable cause to believe that it was intended thereby to give a preference it shall be avoidable by the trustee."

Undoubtedly the conveyance by the bankrupt of his stock of goods by the mortgage in question constituted a preference within the meaning of the act. The mortgage was executed within four months before the filing of the petition. The bankrupt, as it now appears, was then insolvent, and the effect of the enforcement of the mortgage was necessarily to enable the mortgagee to obtain a greater percentage of its debt than other creditors of its class. But these facts do not render the mortgage voidable. To make it so the creditor must have had reasonable cause to believe that it was intended thereby to give a preference.

The mortgage having been executed within the prescribed four months, and necessarily operating, if the bankrupt was then insolvent,

to enable the mortgagee to get a greater percentage of its debt than other like creditors, the question of fact is much simplified, and, as conceded by counsel for both sides, is simply this: Did the mortgagee at the time it took the mortgage have reasonable cause to believe the bankrupt was then insolvent? The referee found in substance that neither the mortgagee nor its attorney knew that the bankrupt was insolvent, but that they had reason to believe that he could not then pay all his creditors in money, and "that some of them would be compelled to depend upon land" which, it was understood, the bankrupt was then negotiating to take in exchange for his stock of goods. On such a finding the referee concluded that the creditor had reason to believe the bankrupt was insolvent. The district judge, on a proper certification to him of the question, after first considering the facts found and testimony taken by the referee, and again considering that and other proof taken upon a motion for a rehearing, found the issue in question in favor of the mortgagee.

The referee obviously adopted an erroneous criterion in determining that issue. A person within the meaning of the bankruptcy act is not insolvent merely because he is unable to pay his debts in money as they become due in the ordinary course of business. Such was the test of insolvency under the bankruptcy act of 1867 (Toof v. Martin, 13 Wall. 40, 20 L. Ed. 481; Dutcher v. Wright, 94 U. S. 553, 24 L. Ed. 130), but by the provisions of section 1, cl. 15, of the act of 1898 (Act July 1, 1898, c. 541, 30 Stat. 544 [U. S. Comp. St. 1901, p. 3419]), as amended, insolvency exists only when the aggregate of a person's property exclusive of certain items therein mentioned "shall not, at a fair valuation, be sufficient to pay his debts." Recognizing the test to be as just quoted, the learned district judge twice heard the issue involved in this case, and after a careful and critical consideration of the evidence as disclosed by his memorandum of opinion before us, twice reached the conclusion that the mortgagee did not have reasonable cause to believe its creditor insolvent when it took the chattel mortgage.

The main facts from which that conclusion was deduced are substantially as follows: The mortgagee had but recently commenced doing business with the bankrupt. In the spring of 1904, before it began selling him goods, it made the inquiries usual among jobbers to determine whether he was entitled to credit, and between that time and September, when he became bankrupt, had sold him about $2,000 worth of dry goods. He was slow in making payments as they matured, but with knowledge of that fact the mortgagee kept on selling him goods. The mortgagee about September 1st learned that he had mortgaged his stock for $1,000 to a man by the name of Barrett, and an attorney was sent to Quenemo, Kan., where the bankrupt did business. He learned that the bankrupt had borrowed $1,000 from Barrett for the purpose of paying a debt that was then due, and was informed that the mortgage had been executed with the consent and approval of the wholesale grocery house which was one of his two remaining merchandise creditors. An investigation then followed into the financial condition of the bankrupt. His stock was examined, and, although

represented by the bankrupt to be worth $8,000, was considered by the attorney of the mortgagee to be conservatively estimated at $5,000. He also had about $100 in open accounts, and the fixtures and equipment of a bakery which cost him between $300 and $400. The indebtedness of the bankrupt was represented by him to be not over $3,700, including the mortgagee's debt. The bankrupt advised the attorney, who remained there parts of two days, that he had an opportunity to sell his entire stock for $6,000, if he would take one-half of that sum in cash and the balance in a farm of the value of $3,000. He represented that such an offer had been made to him and that he could close the deal at any time. He asked the attorney to stay over till the next day, when the owner of the farm was expected to be there to close up the deal. He assured the attorney that he was perfectly solvent, that his business was good and his assets more than sufficient to pay all his debts, but that he did not have capital enough to pay them promptly. The attorney favored his making the sale, and believed from the representations of the bankrupt that it would be speedily culminated. He considered whether he would stay until the transaction for the sale of the stock was made, but concluded that it was not necessary to do so, and, with the prudent view of putting his claim in a condition where he would surely get the money as a necessary prerequisite to passing title to the stock, he took the chattel mortgage to secure the debt. He then advised the bankrupt that, if for any reason the sale should not be made, his client would give him more time on the claim if he could get some more capital in his business. Such are the principal facts of the case. They are told in different ways and with some variation by the different witnesses, and different interpretations are placed upon their testimony by counsel. The result depended upon the credibility due to witnesses, the true import and meaning of lengthy correspondence between the bankrupt and the mortgagee, mercantile agency reports, and other like matters. We have carefully and critically examined all this evidence, and from it we conclude that the mortgage in question was executed at a time and under circumstances justifying the mortgagee in believing, and that it did believe, that the bankrupt was then solvent. It took a mortgage on property which it believed was about to be sold for $2,000 more than enough to pay all. the bankrupt's debts. This seems to have been done merely as an expedient to insure speedy collection.

There are, however, some phases of the evidence and some fair inferences to be drawn from it which strongly tend to the opposite conclusion, and an unprejudiced mind bent on arriving at the truth might, with reason, reach a different conclusion. The taking of a chattel mortgage by a creditor to secure the payment of an overdue debt shortly before the institution of proceedings in bankruptcy by or against him is usually suggestive of insolvency, and should always be carefully scrutinized by the trier of the fact. But peculiar facts, such as are disclosed by the record in this case, may attend the taking of such a mortgage. They should always be carefully considered, with a view of ascertaining what actually inspired it. The conclusion reached by us in this case is the same as that reached by the learned trial judge.

He had some of the witnesses before him, probably knew their character as well as the character of the parties, carefully examined the voluminous correspondence, and adhered on a motion for a rehearing to his first announced decision. His conclusion under such circumstances is entitled to the greatest consideration, and affords us much assurance of the correctness of our own.

This court, in a uniform series of decisions, has declared that, when the trial court has considered conflicting evidence and made its finding and decree thereon, it will be taken as presumptively correct, and will be followed unless an obvious error has occurred in the application of the law or a serious and important mistake has been made in consideration of the evidence. Fitchett v. Blows, 20 C. C. A. 286, 74 Fed. 47; Cheney v. Bilby, 20 C. C. A. 291, 74 Fed. 52; McKinley v. Williams, 20 C. C. A. 312, 74 Fed. 94; Snider v. Dobson, 21 C. C. A. 76, 74 Fed. 757; Denver & R. G. R. Co. v. Ristine, 23 C. C. A. 13, 77 Fed. 58; Moffatt v. Blake (C. C. A.) 145 Fed. 40. See, also, Evans v. State Bank, 141 U. S. 107, 11 Sup. Ct. 885, 35 L. Ed. 654.

The petition filed by creditors to secure an adjudication of bankruptcy against Sowers alleged as the act of bankruptcy the following:

"That Alva L. Sowers is insolvent and that within four months next preceding the date of this petition the said Sowers committed an act of bankruptcy in that he did heretofore in the month of September, 1904, transfer his property to Richardson-Roberts Dry Goods Company with the intent to prefer Richardson-Roberts Dry Goods Company over such other creditors and at the time of such transfer said Sowers was insolvent."

It is contended that the adjudication which followed on that petition is res adjudicata of the present claim of the dry goods company. There is no merit in that contention. Conceding that under the authority of In re American Brewing Co., 50 C. C. A. 517, 112 Fed. 752, and Ayres v. Cone, 138 Fed. 778, 71 C. C. A. 144, the dry goods company would be estopped from again litigating the issues raised by the creditors' petition, namely, whether Sowers was in fact insolvent, or whether he made the alleged transfer with intent to prefer the dry goods company, there is yet left the issue involved in the present case, whether at the time the transfer was made the dry goods company had reasonable cause to believe it was intended by Sowers as a preference, or, as simplified in this case, whether it then had reasonable cause to believe Sowers was insolvent. The giving of a preference by an insolvent as defined by section 60 (a) affords sufficient ground for an adjudication of bankruptcy against him, but is not sufficient to avoid the transfer constituting a preference as against the person receiving it. To accomplish the latter, it must be shown, additionally, that the one receiving it had reasonable cause to believe it was a preference. An issue of that kind was not and could not properly have been presented or tried in the petition for adjudication. In re Rome Planing Mill (D. C.) 96 Fed. 812. The general rule is that the estoppel of a judgment extends only to those material matters in issue or to those without proof of which it could not properly have been rendered.

The order and decree of the District Court allowing the debt of the dry goods company as a secured demand was right, and is accordingly affirmed.