McDONALD et al. v. CAMPBELL.

(Circuit Court of Appeals, Eighth Circuit. February 25, 1907.)

No. 2,389.

APPEAL—FINDINGS OF TRIAL COURT—REVIEW.

The findings of a trial judge, on an issue of fact raised on specifications to a bankrupt's discharge, will not be disturbed on appeal, where an unprejudiced mind could reasonably have reached the conclusions arrived at by consideration of the entire evidence.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 3, Appeal and Error, §§ 3979–3982.]

Appeal from the District Court of the United States for the Northern District of Iowa.

The following are the opinions of Reed, District Judge, in the court below:

On Petition of Trustee for Review of Order of Referee Denying Application to Require the Bankrupt to Turn Over Money or Property to the Trustee.

Without reviewing in detail the testimony upon which the trustee relies for an order requiring the bankrupt to turn over to him $1,500 in money, it must suffice to say that such testimony is lacking in that degree of certainty that would authorize such an order to be made. The trustee contends that an examination of the bankrupt's books shows that, for the three years preceding the bankruptcy, his net profits should have been at least $500 a year, and that he must have had this amount on hand or under his control at the time of the bankruptcy, and it is upon this that the application for the order is based. This is an inference drawn from the examination of the books as to what the bankrupt should have had on hand, rather than a showing beyond doubt of what he in fact did have.

The bankrupt was a merchant tailor and commenced business in Independence in May, 1902, with a capital less than $600, and was adjudged bankrupt May 15, 1905. It could hardly be expected that upon such an amount of capital the expenses of the business and living expenses of his family, (consisting of himself and wife) could be paid and a net profit of $500 a year be made. October 6, 1903, the bankrupt made a statement to a mercantile agency as a basis for credit, which statement is as follows:

### Assets.

| | | |
|---|---|---|
| Cash value of stock | $ | 800 |
| Outstanding accounts | | 200 |
| | | |
| Total assets | $ | 1,000 |

### Liabilities.

| | | |
|---|---|---|
| Owing for merchandise | $ 145 | |
| Owing at bank | 150 | 295 |
| | | |
| Surplus in business | $ | 705 |

After this statement was made, and before September 6, 1904, ne purchased property on credit to the amount of about $800, for which amount claims have been proved and allowed against his estate. On September 6, 1904, the bankrupt made another statement to the same agency for a like purpose, which is as follows:

### Assets.

| | | |
|---|---|---|
| Cash value of stock | $ | 1,200 |
| Outstanding accounts | | 200 |
| | | |
| Total assets | $ | 1,400 |

### Liabilities.

| | | |
|---|---|---|
| Owing for merchandise | $ 450 | |
| Owing bank | 150 | 600 |
| | | |
| Surplus in business | $ | 800 |

Such statements are usually as favorable to the maker as the facts will warrant, and, assuming that the stock of goods was of the value estimated, the increase of capital was not to exceed $200 in about two years and four months.

Taking the last statement as a basis upon which to ascertain the condition of the bankrupt at the time of filing his petition in bankruptcy, the referee finds from the testimony such condition to be substantially as follows:

| | | |
|---|---|---|
| Net worth shown by statement of September 6, 1904 | $ 800 | 00 |
| Goods bought since such statement | 90 | 76 |
| Discount at bank | 50 | 00 |
| | | |
| Total | $ 940 | 76 |

Payments made since September 6, 1904, as follows:

| | | |
|---|---|---|
| To First National Bank | $ 200 | 00 |
| Upon merchandise bought | 84 | 68 |
| To home creditors | 148 | 28 |
| Value of merchandise as scheduled by bankrupt | 500 | 00 |
| | | |
| Total | $ 932 | 96 |

In reaching this conclusion, the referee says: "I have assumed that the profits and earnings of the bankrupt paid all expenses of his family and his business, although the bankrupt testified that it was necessary to average $5 (profit) on a suit to pay expenses, and he lacked 31 (suits) of that number. On the question of profits, he testified that if he made a suit himself and did all the work there would be $12 to $15 profit, including his own labor. He further testified that the first year he was in business 'I just about made my expenses.' The business since that date does not seem to have increased either in volume or profit. The examination of the bank account of the bankrupt from May 1, 1904, until the date of the bankruptcy proceedings, does not disclose a different state of facts than is shown by the foregoing statement."

Such conclusion of the referee is fairly supported by the testimony. It is only when the testimony shows beyond reasonable doubt that the bankrupt has money or property in his custody or under his control that belongs to his estate that an order can rightly be made requiring him to turn the same over to his

trustee. Boyd v. Glucklich, 116 Fed. 131, 53 C. C. A. 451. The testimony in this case is far short of showing beyond reasonable doubt that this bankrupt at the time he filed his petition in bankruptcy, or when he was examined, had money or property belonging to his estate or in his custody, or under his control, which he was concealing from his trustee. The fair inference from the testimony is that the profits of the business did not pay his expenses for the two years preceding the bankruptcy.

The order of the referee denying the application of the trustee is approved.

### On Petition for Discharge and Objections Thereto.

There are 26 specifications of grounds of opposition to the discharge, many of which are based upon the alleged concealment by the bankrupt of $1,500 to $2,000 in money from his trustee. Others specify alleged false oaths by the bankrupt upon his examinations at the first and subsequent meetings of his creditors, and others that he destroyed or failed to keep books of account, with intent to conceal his true financial condition.

The finding of the referee upon the application of the trustee for an order requiring the bankrupt to turn over the money or property alleged to have been concealed and the approval thereof disposes of the specifications based upon that ground. Those charging false oaths in other respects are based mainly upon the denial by the bankrupt of having written letters to certain named persons inquiring if they had property for sale, and one seeking a position for himself and wife at the Cherokee Hospital for the Insane, or of receiving answers to any of such letters. It does not appear that the bankrupt purchased any property so inquired about, and failed to account for the same, or secured a situation at the hospital, and it is not apparent how the writing of such letters or the receiving of answers thereto, if received, can be material upon any question arising in this bankruptcy proceeding.

The specification charging the failure to keep, or having destroyed books of account to conceal his true financial condition, is based upon the fact that some of the checks made by the bankrupt upon the bank where he kept his account, and which were returned to him by the bank after they had been paid and canceled, are missing. It does not appear that such missing checks were purposely destroyed by the bankrupt, or with intent on his part to conceal his true financial condition. It is incumbent upon the objecting creditors to show this. The fair conclusion from the testimony is that such checks were lost, or burned without unlawful intent, when the bankrupt moved from one place of business to another the latter part of April prior to his bankruptcy. The pass book of the bank shows the amount of money deposited during the year preceding the bankruptcy and the amount checked out by him, and from this book and those of the canceled checks which were not lost no inference fairly arises that any fraudulent use of the money deposited in the bank was made by the bankrupt, or that his true financial condition was or could in any way have been concealed by the loss of the canceled checks. The testimony must be clear and convincing that the bankrupt has intentionally committed some one or more of the acts declared by the bankruptcy law as grounds for withholding his discharge. A careful consideration of all the testimony in this proceeding does not so show, and the discharge will be granted.

It is so ordered.

Roy A. Cook (J. E. Cook, on the brief), for appellants.
H. C. Chappell, for appellee.

Before VAN DEVANTER and ADAMS, Circuit Judges, and PHILIPS, District Judge.

VAN DEVANTER, Circuit Judge. The record before us is confused and unsatisfactory. It seems to present an appeal from an order of the bankruptcy court granting Robert A. Campbell, a bankrupt, a discharge, and overruling objections thereto made by some of the creditors, and also from another order, concurrently entered, approving

the referee's denial, after a full hearing had upon due notice, of a petition by the trustee, not set forth in the record, requesting an order that the bankrupt deliver to the trustee $1,500, alleged to belong to the bankrupt estate and to be knowingly and fraudulently concealed and withheld by the bankrupt. It is, however, left uncertain whether the two orders are challenged by a single appeal or by separate appeals by different appellants; the petition or petitions praying an appeal being omitted from the transcript. The objections to the discharge included the charge made in the trustee's petition and also other specifications, as that the bankrupt had knowingly made false oath in respect of material matters in certain proceedings relating to the bankrupt estate, and, with intent to conceal his true financial condition, had destroyed certain canceled bank checks from which that condition might be ascertained.

The referee found that the evidence did not show that the bankrupt concealed or withheld from the trustee moneys belonging to the bankrupt estate, and the court concurred in this finding. The court also found that the other charges specified in the objections to the discharge were not sustained. Both orders of the court turned solely upon questions of fact. It would serve no useful purpose to narrate or discuss the evidence. It has been carefully read and considered. Some portions of it and some inferences to be drawn therefrom tend strongly to sustain the charges made; but we think that, upon the entire evidence, an unprejudiced mind, bent upon arriving at the truth, might reasonably reach a different conclusion. A familiar rule, therefore, forbids that we should disturb the findings. Snider v. Dobson, 21 C. C. A. 76, 74 Fed. 757; Barton Bros. v. Texas Produce Co., 69 C. C. A. 181, 136 Fed. 355; Hussey v. Richardson-Roberts Dry Goods Co. (C. C. A.) 148 Fed. 598.

It may be that the order approving the denial of the trustee's petition was a mere step in bankruptcy proceedings proper, and therefore subject to revision by us only in matter of law, under clause "b" of section 24 of the Bankruptcy Act of July 1, 1898, c. 541, 30 Stat. 553 [U. S. Comp. St. 1901, p. 3432] (Holden v. Stratton, 191 U. S. 115, 118, 24 Sup. Ct. 45, 48 L. Ed. 116; First National Bank of Chicago v. Chicago Title & Trust Co., 198 U. S. 280, 25 Sup. Ct. 693, 49 L. Ed. 1051; In re Mertens, 73 C. C. A. 561, 142 Fed. 445; In re McMahon [C. C. A.] 147 Fed. 684. See, also, Boyd v. Glucklich, 53 C. C. A. 451, 116 Fed. 131; In re Rosser, 41 C. C. A. 497, 101 Fed. 562); but as this question was not discussed by counsel, and as the appeal from the order granting a discharge has made it necessary for us to consider the question of fact which is sought to be also presented by the other branch of the appeal, we pass over the jurisdictional question here suggested.

The orders are affirmed.