GAGE et al. v. J. F. SMYTH MERCANTILE CO. et al.

(Circuit Court of Appeals, Eighth Circuit. February 17, 1908.)

No. 2,627.

1. USURY—DEVICE TO COVER USURY—COTTON CONTRACT—FINDINGS—EVIDENCE.
Evidence *held* to sustain a finding that the execution of a cotton contract for alleged advances was a mere cover for the charging of usurious interest.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 47, Usury, §§ 328–339.]

2. APPEAL AND ERROR—REVIEW—QUESTIONS OF FACT.
The decision of a question of fact by the trial court, which depended on the acts and intentions of the parties, and proper inferences to be drawn from the evidence, will not be reversed on appeal unless some

serious or important mistake appears to have been made in the consideration of the evidence.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 3, Appeal and Error, §§ 3955–3969.]

3. USURY—APPLICATION OF PAYMENTS.

Where cotton contracts securing a loan of money were made in Missouri, and were mere covers for usury, all payments made thereon as damages for the nondelivery of cotton thereunder should be applied as payments on the principal or legal interest on such indebtedness, under Rev. St. Mo. 1899, § 3709 (Ann. St. 1906, p. 2077), providing that, on proof that usurious interest has been paid, the sum in excess of legal interest shall be deemed payment and credit on principal debt, etc.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 47, Usury, §§ 219–234.]

4. EQUITY—RELIEF—CONFORMITY TO PLEADING.

Where a bill to cancel certain securities, and for an accounting as to the payment of a debt, did not complain of or ask any relief concerning a certain cotton contract executed in 1901, nor with regard to any transactions prior to March 18, 1902, when the second contract was executed. complainants were not entitled to any relief with reference to such prior transactions.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 19, Equity, §§ 1001–1003.]

5. STIPULATIONS—AMOUNT OF RECOVERY—CONCLUSIVENESS.

Where it was stipulated between counsel for all parties that in case of the affirmance of a master's report complainant should recover $132.81, all parties were concluded by the stipulation as to the amount due.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 44, Stipulations, §§ 38–54.]

Appeal from the Circuit Court of the United States for the Southeastern Division of the Western District of Missouri.

On April 28, 1905, appellees brought a suit in equity against appellants in the circuit court of Pemiscot county, Mo., for the purpose of obtaining an accounting between the J. F. Smyth Mercantile Company and appellants, in regard to a certain loan made by appellants to said company on March 18, 1902. The prayer of the petition also asked that a certain deed of trust executed by J. F. Smyth and Katie Smyth and two promissory notes executed by J. F. Smyth and Katie Smyth and the J. F. Smyth Mercantile Company given to secure said loan be canceled and for naught held, and that certain insurance policies assigned to secure said loan be delivered by appellants to appellees, and that a money judgment should be rendered in favor of appellees for any balance found due said mercantile company on said accounting. In due time, appellants properly removed said suit into the United States Circuit Court for the Southeastern Division Judicial District of Missouri. In the last-named court the appellants answered the bill of appellees, and also filed a cross-bill, asking for the foreclosure of the trust deed heretofore mentioned. Such proceedings were thereafter had in said suit that on the 2d day of March, 1907, on a hearing had upon pleadings and proofs, the trial court rendered a final decree, wherein the appellees were granted all the relief asked for in their bill, so far as the deed of trust, promissory notes, and insurance policies were concerned, and also a money judgment of $132.81. From this decree appellants appealed to this court. The record certified to this court, pursuant to said appeal, shows the following material facts:

On and prior to March 18, 1902, appellants were engaged in the cotton commission business at Memphis, Tenn., and the J. F. Smyth Mercantile Company was a corporation organized under the laws of Missouri and was doing a general merchandise business at Caruthersville, in said state. J. F. Smyth was the general manager of said business. On March 18, 1902, the J. F. Smyth Mercantile Company, was indebted to appellants in the sum of $2,500,

growing out of a loan made by appellants to it on February 28, 1901. The mercantile company could not pay this indebtedness, and was being pressed by numerous other creditors for payment of their demands, all of which was known to appellants. In this condition of affairs, in consideration of the execution and delivery of a deed of trust by J. F. Smyth and Katie Smyth on certain lands in Missouri to appellants dated March 18, 1902, and referred to in the bill herein; in consideration of the execution and delivery of two promissory notes dated March 18, 1902, by J. F. Smyth, Katie Smyth, and J. F. Smyth Mercantile Company for the sum of $3,000 each, due November 15, 1902, and February 1, 1903, respectively, with interest at 8 per cent. per annum; in consideration of the assignment of an insurance policy on the life of said J. F. Smyth for $2,000, and a fire insurance policy for $3,000 on the property belonging to the J. F. Smyth Mercantile Company; and, further, in consideration of the execution and delivery of a contract in words and figures as follows:

"Agreement.

"W. A. Gage.                                                    W. A. Gage.

"Caruthersville, Mo., Mch. 18, 1902.

"Whereas, we are indebted to W. A. Gage & Co., of Memphis, Tenn., in the sum of six thousand dollars, as evidenced by 2 promissory notes of this date for $3,000 each due Nov. 15 and Feby. 1, next respectively. And whereas, said advance was obtained on the faith of the representations made by us that we could deliver, or cause to be delivered, to the said W. A. Gage & Co., by the first day of January, 1903, 600 bales of cotton for storage and sale on commissions, which said representation we hereby expressly warrant to be true. Now, in consideration of the premises, and the agreements made by said W. A. Gage & Co., as hereinafter stated, we do hereby agree to deliver, or cause to be delivered to the said W. A. Gage & Co., at their warehouse in the city of Memphis on or before the first day of January, next, 600 bales of cotton, to be sold by them as such commission merchants, and from the proceeds of the first cotton shipped, or from the first payments made, said W. A. Gage & Co., shall, first, pay all charges on said cotton as storage and commission for selling; shall, secondly, pay any additional sum that may be advanced us by the said W. A. Gage & Co., which may not be secured by note; shall, thirdly, pay any storage and commission on cotton which we fail to ship as above agreed, at the rate of one dollar and twenty-five cents a bale; and shall, fourthly, apply the proceeds of the remainder of the proceeds of said cotton, or other payments, to the promissory notes above mentioned, or to any other debits with which we may stand charged. W. A. Gage & Co., having the right, at their option, to apply or change application of payments or make re-application of payments.

"And the said W. A. Gage & Co., agree, by their acceptance of this writing, to provide storage for said cotton until the same is sold, and to sell the same for the usual commission charged. And in consideration thereof, in order to compensate W. A. Gage & Co. for their trouble and expense in providing safe storage and necessary and proper means and facilities for selling said cotton, we agree in default of the delivery of said cotton, or any part thereof, to pay said W. A. Gage & Co. on January 1st next one dollar and twenty-five cents per bale as liquidated damages on the number of bales so in default. Should W. A. Gage & Co. advance us a greater sum than six thousand dollars, which additional advance shall be optional with W. A. Gage & Co., and shall be due and payable as soon as created we hereby agree and bind ourselves to ship them one bale of cotton for each ten dollars charged to us by September 1, 1902, over and above the amount originally intended to be advanced. Should we owe the said W. A. Gage & Co. anything because of our failure to comply with this agreement, then said indebtedness for deficit commission is to be regarded as a part of the indebtedness herein acknowledged, and shall be collectible hereunder. It is hereby further agreed that we are to pay interest on notes and on open account at the rate of eight per cent. per annum. To secure the payment of any balance which may be due, as shown by the books of W. A. Gage & Co., we waive exemptions as to personal property, and

agree to pay a reasonable attorney's fee, should a lawyer be employed to collect the same.

"Given under our hands, this 18th day of March, 1902.

"J. F. Smyth,
"J. F. Smyth Merc. Co.
"By J. F. Smyth, Pres."

Appellants advanced for the use and benefit of the creditors of the J. F. Smyth Mercantile Company $3,500, which added to $2,500, which the J. F. Smyth Mercantile Company was owing on old account, made up the amount of $6,000, for which the two promissory notes were given, and to secure payment of which the deed of trust was executed and delivered, and the insurance policies were assigned. Not $1 of the new money so advanced was given to J. F. Smyth or the J. F. Smyth Mercantile Company, except as paid out to the creditors of the J. F. Smyth Mercantile Company through the representative of the appellants and the representative of the creditors of said company. The J. F. Smyth Mercantile Company shipped under said cotton contract of March 18, 1902, one bale, and appellants charged to the general account of said company $748.75, being the amount of shortage on 599 bales at $1.25 per bale. No money was advanced by appellants under this cotton contract other than the $3,500. On March 26, 1903, the mercantile company or J. F. Smyth having paid but little on said notes, without the advancement of any new money by appellants, executed and delivered to appellants a new cotton contract similar in substance and form to the one hereinbefore set out, except it called for 500 bales to be delivered on or before January 1, 1904, and contained the following recital:

"Whereas, we are indebted to W. A. Gage & Co., of Memphis, Tenn., in the sum of six thousand dollars, as evidenced by promissory notes of date Mch. 18, 1902, $3,000 due Nov. 15, '02, $3,000 due Feb. 1, '03, which indebtedness W. A. Gage & Co. have agreed to extend until the coming fall at our request. And whereas, said extension was obtained on the faith of the representations made by us that we could deliver or cause to be delivered, to the said W. A. Gage & Co., by the first day of January, 1904, 500 bales of cotton for storage and sale on commissions, which said representation we hereby expressly warrant to be true."

Under this second contract there was shipped by the Smyth Mercantile Company about seven or eight bales, and the number of bales short at $1.25 per bale was charged to the general account of said J. F. Smyth Mercantile Company. On March 18, 1904, the notes hereinbefore mentioned not having been paid, the mercantile company and J. F. Smyth, without advancement of any new money by appellants, executed and delivered to appellants a new cotton contract similar in form and substance to the contract of March 18, 1902, except it called for 500 bales to be delivered on or before January 1, 1905, and contained the following recital:

"Whereas, we are indebted to W. A. Gage & Co., of Memphis, Tenn., in the sum of six thousand dollars, as evidenced by promissory notes of this date Mch. 18, 1902, $3,000.00 due November 15, '02, Mch. 18, 1902, $3,000.00 due Feb. 1, '03, which indebtedness W. A. Gage & Co. have agreed to extend until the fall of 1904 at our request. And whereas, said extension was obtained on the faith of the representations made by us that we could deliver or cause to be delivered, to the said W. A. Gage & Co., by the first day of January, 1905, five hundred bales of cotton for storage and sale on commissions, which said representation we hereby expressly warrant to be true."

Under the third cotton contract there were shipped 23 bales, and the shortage at $1.25 per bale was charged to the general account of J. F. Smyth Mercantile Company. At the time these three cotton contracts were made the J. F. Smyth Mercantile Company or J. F. Smyth were not in the cotton business to the knowledge of appellants. The cotton contracts were executed under such conditions and circumstances as to fully warrant a finding by the trial court that the J. F. Smyth Mercantile Company and J. F. Smyth were for all practical purposes compelled to sign them to prevent a foreclosure of the trust deed, and that neither party to said contracts expected that any cotton would be shipped thereunder. The few bales that were shipped were not shipped by the J. F. Smyth Mercantile Company or J. F. Smyth with the

intention of performing said contracts, but to accommodate some parties who wished to ship a few bales to Memphis, in order to obtain a better price. Other facts tending to support the findings of the trial court appear of record, but enough has been stated to illustrate the principles involved in the decision of the case.

Thomas M. Scruggs (St. John Waddell, on the brief), for appellants.

Charles B. Faris, A. L. Oliver, R. L. Ward, and L. L. Collins, for appellees.

Before HOOK and ADAMS, Circuit Judges, and CARLAND, District Judge.

CARLAND, District Judge (after stating the facts as above). The claim of the appellees is that the cotton contracts were a scheme or device to cover usurious interest on the loan represented by the two promissory notes of $3,000 each. If this claim is well founded, the amount of money paid by the mercantile company or J. F. Smyth, as damages on the cotton contracts, should be credited on the notes representing the loan of $6,000. The contracts involved in this suit are to be construed with reference to the laws of the state of Missouri, as they are Missouri contracts. Section 3709 of the Revised Statutes of Missouri 1899 (Ann. St. 1906, p. 2077) provides as follows:

"Sec. 3709. Defendant may plead usury—judgment, how rendered. Usury may be pleaded as a defense in civil actions in the courts of this state, and upon proof that usurious interest has been paid, the same, in excess of the legal rate of interest, shall be deemed payment, shall be credited upon the principal debt, and all costs of the action shall be taxed against the party guilty of exacting usurious interest, who shall in no case recover judgment for more than the amount found due upon the principal debt, with legal interest, after deducting therefrom all payments of usurious interest made by the debtor, whether paid as commissions or brokerage or as payment upon the principal or as interest on said indebtedness."

The trial court found from the evidence before it that the cotton contracts were simply a scheme or device to cover usurious interest, and directed that all payments made subsequent to March 18, 1902, by the mercantile company or Smyth to appellants should be credited on the loan of $6,000.

After careful consideration of the evidence hereinbefore stated and the other evidence appearing in the record, we are satisfied that the trial court was justified in reaching the conclusion that it did upon the facts. The question as to whether or not the cotton contracts were a scheme or device to cover usurious interest turned wholly upon the decision of a question of fact, and as this decision depended upon the acts and intentions of the parties and the proper inferences to be drawn from the evidence this court on familiar principles will not reverse the finding unless some serious and important mistake appears to have been made in the consideration of the evidence. Coder v. Arts, 152 Fed. 943, 82 C. C. A. 91; McDonald et al. v. Campbell, 151 Fed. 743, 81 C. C. A. 101; Snider v. Dobson, 74 Fed. 757, 21 C. C. A. 76; Barton v. Texas Produce Co., 136 Fed. 355, 69 C. C. A. 181; Hussey v. Richardson, etc., Dry Goods Co., 148 Fed. 598, 78 C. C. A. 370. The same rule has been announced and acted upon by the Supreme Court of the United States. Tilghman v. Proctor, 125 U. S. 136, 8 Sup.

Ct. 894, 31 L. Ed. 664; Kimberly v. Arms, 129 U. S. 512, 9 Sup. Ct. 355, 32 L. Ed. 764; Evans v. Bank, 141 U. S. 107, 11 Sup. Ct. 885, 35 L. Ed. 654; Furrer v. Ferris, 145 U. S. 132, 12 Sup. Ct. 821, 36 L. Ed. 649.

In the case of Cockle et al. v. Flack et al., 93 U. S. 344, 23 L. Ed. 949, it was held that contracts by commission merchants similar to the cotton contracts in this case were not necessarily usurious. That commission merchants may loan their money at lawful rates of interest to such parties and on such terms as would bring them also the business which would grow out of the investment of it; that if the contract was made only with the honest purpose of securing in addition to interest, the profits incidental to handling the products as commission merchants it would not be usurious; that, on the other hand, such contracts might be used as a mere evasive device to cover usurious interest; and that in jury trials it would be the province of the jury, and in suits in equity of the chancellor, to determine on a full consideration of all the facts whether it be the one or the other. To the same effect are the cases of Patillo v. Allen-West Commission Co., 108 Fed. 723, 47 C. C. A. 637; Harman v. Lehman, 85 Ala. 384, 5 South. 197, 2 L. R. A. 589; McKenzie v. Garnett, 78 Ga. 257; Shattuck v. Clark (Tex. Civ. App.) 34 S. W. 404; Uhlfelder v. Carter's Adm'r, 64 Ala. 532.

In the case of Cockle v. Flack and several of the other cases above cited there was no question but that the parties to the contracts could or would perform them, and the loans or advancements were to be invested in the purchase of property which was to be sold and the proceeds applied to the payments of the existing debt. In the case at bar the delivery of cotton could not have been contemplated. No money was advanced to be invested in cotton. The whole reasoning upon which such contracts as are described in Cockle v. Flack, supra, are sustained at all wholly failed. Such contracts as were made in this case were held void for want of consideration by Caldwell, C. J., in Norman v. Peper (C. C.) 24 Fed. 405, but it is not material in this case whether they are void as a cover for usury or for want of consideration; in either event the payments made thereon as damages must be applied on the loan.

It appears in the record that there was an item of $157.50 charged the Smyth Mercantile Company for shortage on a cotton contract of 1901. Counsel for appellants urge in their brief that this amount cannot be counted as usury or included in the decree awarded the appellees; for the reason that it is admitted that both parties intended to perform the contract of 1901. This item cannot be included in the decree awarded the appellees for much stronger reasons. The bill of appellees did not complain or ask relief in regard to any transactions prior to March 18, 1902. The decree rendered in direct terms limited the accounting between the parties to payments made subsequent to said date, that being the date of the notes. In this state of the record counsel for the respective parties made the following stipulation: -

"In this cause the reference to the master to state an account under the findings and opinion of the court is by agreement of counsel hereby waived. And it appearing from the proof that upon such reference being executed the

amount due from defendants W. A. Gage & Co., to the complainant the J. F. Smyth Mercantile Company, would, under the opinion of the court, amount to the sum of $132.81 at the date of the decree to be passed herein, it is hereby agreed between counsel for all parties, respectively, that a decree may be passed for said sum."

We have no right to suppose that the item of $157.50 was considered in the making of this stipulation as the amount stipulated to be due the appellees was upon the expressed idea that an accounting had in accordance with the opinion and decree of the court would show a balance of $132.81 in favor of appellees. Upon the record as it now stands all parties are concluded by the stipulation as to the amount due.

Counsel for appellants urge in support of the good faith of the cotton contracts that the Smyth Mercantile Company and J. F. Smyth warranted their representations as to the delivery of the cotton to be true. This is so, and still what could appellants think of such a warranty in the contract of 1903 when the same warranty was in the contract of 1902 for 600 bales, and only one bale was delivered thereunder? The mind of man cannot conceive or his hand frame a cover for fraud or usury that a court of equity will not look through and beyond it to see what the real transaction is, and if it finds it to be fraudulent or usurious will so declare, notwithstanding the parties may as to form have conducted themselves in a manner beyond criticism.

No error appearing in the record, the decree appealed from is affirmed.