[Civ. No. 13295.   Second Dist., Div. Two.   Oct. 10, 1941.]

B. A. COATES, as Trustee, etc., Respondent, v. MAGUIRE OIL AND REFINING CORPORATION (a Corporation) et al., Defendants; THE STATE OF CALIFORNIA, Appellant.

Earl Warren, Attorney General, H. H. Linney and Burdette J. Daniels, Deputies Attorney General, for Appellant.

Raphael Dechter for Respondent.

HANSON, J., *pro tem.*—This appeal presents the question whether a tax lien created by statute against the property of a distributor of gasoline takes precedence over the lien of a chattel mortgage thereon, where the tax accrued and became a lien subsequent to the recording of the chattel mortgage. A further question is whether the lien of the chattel mortgage had ceased to exist when the tax lien attached. If it had it is obvious that no question as to superiority of lien is involved, and hence we shall first address our attention to a determination of that pivotal point.

We cull from the record the following facts which we regard as material to a decision: On April 2, 1938, the Sunshine Oil Company, Ltd. (hereinafter referred to as Sunshine or mortgagee), now bankrupt (of which respondent here is trustee in bankruptcy), entered into an agreement with Buena Vista Supply Company (hereinafter referred to as Buena Vista), the predecessor in interest of the defendant Maguire Oil and Refining Corporation (hereinafter referred to as ''Maguire'' or ''mortgagor''), by the terms of which Buena Vista was to purchase daily from Sunshine a minimum of 2000 barrels of crude oil, with exceptions not here material, for a period of one year from and after the completion by Buena Vista of a certain topping plant. The agreement, which by its terms required the buyer to execute a chattel mortgage on the topping plant when it was completed to secure the performance of the agreement, further recited that if Buena Vista should fail to comply with its agreement to purchase daily a minimum of 2000 barrels of crude oil owing to causes beyond its control, that then the time for complete performance should be extended accordingly by the number of days it was in default, provided

prompt notice was given of the nature and reason for the default. The topping plant was completed on or about July 20, 1938, and immediately delivery of crude oil began in accordance with the contract.

Pursuant to the terms of the contract Maguire, as the successor of Buena Vista, then executed a chattel mortgage in favor of Sunshine, which was duly recorded. Counsel for the state contends that the agreement was not annexed to the mortgage when it was recorded, but this is denied by respondent. From the record we are unable to determine what the fact is, and accordingly will assume that the agreement was annexed to the mortgage. The mortgage recites that it is "security for the performance of all obligations set forth and contained in a certain agreement made and executed on the 2nd day of April, 1938, by and between . . . Sunshine . . . therein designated as 'seller', and the Buena Vista . . . therein designated as 'buyer'. . . . " As it is clear from the record that the topping plant was completed on or about July 20, 1938, and that delivery of crude oil from the mortgagee (seller) to the mortgagor (buyer) began on or about the same date, it is likewise clear that the lien of the chattel mortgage terminated by its terms on July 20, 1939, unless it can be said, as respondent contends, that it was validly extended beyond that date.

On November 3, 1939, the trustee in bankruptcy filed in the court below a "complaint to foreclose chattel mortgage," naming as defendants therein Maguire, Buena Vista and the State of California. The complaint is in the usual form, setting forth the pertinent provisions of the agreement and the chattel mortgage, except that there is no reference to the provision in the agreement that deals with the termination of the lien of the chattel mortgage or its extension. The breach charged against the mortgagor (in count I) was that between September 16 and October 12, 1939, it had not paid for crude oil of a value of $13,769.68 delivered under the agreement, nor had it paid rent as therein provided on October 15 nor on November 15, 1939, in the amount of $100 due on each of those dates. The complaint proceeded to allege that the defendants claimed an interest or lien upon the mortgaged property but that such claim was inferior "to the claim of plaintiff herein sued upon." The second count set forth the provision in the agreement for

extending the term, and alleged that the mortgagor had notified the mortgagee of various shutdowns caused by reasons beyond its control; that such shutdowns totaled 67 days, and by reason thereof and by the terms of the agreement the term was extended 67 days beyond July 20, 1939 [i. e., to September 30, 1939], and that by written agreement executed on September 30, 1939, the mortgagee and mortgagor had extended the term to November 1, 1939. The complaint went on to allege that notwithstanding the mortgagee had at all times during the term and the extended term been willing to deliver the minimum number of barrels which the mortgagor was obligated to take under the agreement, the mortgagor had failed so to do, to the damage of the mortgagee in the sum of $25,000.

To the complaint the defendant State of California answered, admitting it claimed an interest and lien upon the property; that the claim and lien arose by virtue of taxes due it from Maguire pursuant to the provisions of the Motor Fuel License Tax Act, Deering's Gen. Laws, 1937, Act 2964[1]; that the taxes accruing as of December 1, 1939, were in the sum of $5873.18 "and are a prior lien to any interest of the plaintiff herein."

Parenthetically it should be stated that shortly after this action was instituted respondent, under a stipulation made with the state, deposited in the registry of the court the sum of $5873.18, this being the amount of tax claimed by the state, to abide the judgment in the case.

On the trial the only evidence offered by plaintiff to sustain its claim made in the second count, that the term

---

[1]The statute, so far as material here, reads: "License taxes herein required to be paid shall be payable in monthly installments to the state controller for the month ending April 30, 1931, and each and every calendar month thereafter. The license tax shall be a lien upon all property of the distributor, attaching at the time of delivery or distribution subject to said license tax, having the effect of an execution duly levied against all property of the distributor, and remaining until the license tax is paid, or the property sold in payment thereof. The amount of such license tax for each month shall be paid on or before the first day of the second calendar month thereafter, and if not paid prior thereto, shall become delinquent at five o'clock in the afternoon of said day, and ten per cent penalty shall be added thereto for delinquency."

had been extended beyond July 20, 1939, was certain documents, only two of which bore on that question. The state objected to the admission of all the documents. As the objection was vital if well taken, we shall now discuss the question of the admissibility of the documents.

The first document offered was an order of the referee in bankruptcy having jurisdiction of the estate of the bankrupt Sunshine. This order, made upon a stipulation between the trustee in bankruptcy of Sunshine and Maguire without notice to creditors, found and determined that in the year period, July 20, 1938—July 20, 1939, there had been suspensions of deliveries for cause under the agreement, and that the effective term of the agreement was accordingly extended to September 30, 1939. The order does not purport, unless it be by implication, to extend the lien of the chattel mortgage. The state objected to the introduction of the document upon the grounds, among others, that it was hearsay and not binding upon the state. The objection was overruled, seemingly upon the theory that as there had been a judicial hearing the order was *res judicata* and binding upon all persons. The ruling was erroneous.

The fact that the bankruptcy court which made the order had adjudicated Sunshine a bankrupt and by the adjudication was vested with the estate of the bankrupt, did not invest the court with jurisdiction to adjudicate without notice and hearing to a creditor of the mortgagor who was not the bankrupt and whose property was not an asset of the bankrupt nor within the jurisdiction of that court. Even if the bankrupt had been the mortgagor instead of the mortgagee and the mortgaged property had been in possession of the bankrupt on adjudication, still the court could not have affected the lien without notice and hearing to the lienholder. In a case where a chattel mortgagor was adjudicated a bankrupt on the ground that the mortgage constituted a preference to the mortgagee, it was held that the adjudication was not *res judicata* where the mortgagee sought to prove his claim in the bankruptcy proceedings as a secured creditor. (*Hussey* v. *Richardson-Roberts Dry Goods Co.*, 148 Fed. 598 [78 C. C. A. 370].) The reason for the rule is obvious. Nothing short of notice and hearing is due process, and due process is required in a bankruptcy court as well as in a court of general jurisdiction. It is un-

necessary to refer to the cases on the subject in detail, but see *In re De Fatta,* 10 Fed. Supp. '375; *In re Platteville Foundry & Machine Co.,* 147 Fed. 828; 7 C. J., sec. 307, note 33; 8 C. J. S., sec. 311, notes 81, 82. In the instant case the order of the referee in bankruptcy did not purport to extend the lien of the chattel mortgage; and even if it had, the bankruptcy court would have been without jurisdiction to do so. The fact that the state had filed a wholly unrelated claim in the bankruptcy proceedings is of no moment. Likewise the fact that one is a party to bankruptcy proceedings as such does not make one a party to a special proceeding had therein. The claim of lien of the State of California was not claimed by, through or under the bankrupt. It was a claim of lien adverse to the bankrupt and the mortgagor and was derived from statute.

▮ The only other item of evidence offered to prove an extension of the lien of the chattel mortgage was a written agreement entered into on September 30, 1939, between the trustee in bankruptcy and Maguire, purporting to extend the term beyond September 30, 1939, to and including October 31, 1939. The agreement was not recorded. The apt objection to it by the state should have been sustained. The agreement which was secured by the chattel mortgage provided an exclusive method by which the term of the lien of the chattel mortgage might be extended so as to bind other creditors of the mortgagor. There is not a scintilla of evidence to indicate that the procedure therein provided was followed. It was not until after the lien of the mortgage had lapsed that an endeavor was made to breathe life into the dead lien.

▮ Other documents received, such as exhibits 10 and 11, pertaining to a "possession" taken by or given to the trustee, were inadmissible under the issues as made by the pleadings. Their receipt in evidence was error.

Count 2 sought damages for breach of the agreement. Whether under the terms of the agreement it may be said that the chattel mortgage was intended to secure the mortgagee for any "damages" that might ensue we have no occasion to determine now. (But see *Hayashi* v. *Pacific Fruit Exchange,* 43 Cal. App. 677 [186 Pac. 174].)

Inasmuch as the plaintiff failed to establish by competent evidence the existence of its chattel lien after July 20, 1939,

and it being conceded at the trial that the state had a lien, the court should have awarded the fund in the registry to the state.

From what has been said it follows that the point here decided determines the case, and so we have no occasion to discuss the other contentions which have been urged.

Judgment reversed.

Wood, Acting P. J., and McComb, J., concurred.

A petition for a rehearing was denied November 7, 1941, and respondent's petition for a hearing by the Supreme Court was denied December 8, 1941. Curtis, J., voted for a hearing.